**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

JIMMIE HARDAWAY, JR., LARRY A. BOYD,
FIREARMS POLICY COALITION, INC., and
SECOND AMENDMENT FOUNDATION,

                    *Plaintiffs*,

      v.

STEVEN A. NIGRELLI, in his official capacity as
Superintendent of the New York State Police,
BRIAN D. SEAMAN, in his official capacity as
District Attorney of the County of Niagara, and
JOHN J. FLYNN, in his official capacity as District
Attorney of the County of Erie,

                    *Defendants.*

Civil Action No.
1:22-cv-00771-JLS

**AMICUS BRIEF OF EVERYTOWN FOR GUN SAFETY
IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

William J. Taylor, Jr.
Everytown Law
450 Lexington Avenue, #4184
New York, NY 10017
wtaylor@everytown.org
(646) 324-8215
*Counsel for Amicus Curiae
Everytown for Gun Safety*

## CORPORATE DISCLOSURE STATEMENT

Everytown for Gun Safety (formally, Everytown for Gun Safety Action Fund) has no parent corporations. It has no stock; hence, no publicly held company owns 10% or more of its stock.

# TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE ................................................................................. 1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................... 1

ARGUMENT ................................................................................................................. 2

    I.     The Proper Focus for Analysis of Historical Regulation Is 1868, Not 1791 ......... 2

    II.    The State's Historical Analogues Are Not "Outliers," and *Bruen* Does Not
          Require Proof of "Continuity" ............................................................................... 8

CONCLUSION ............................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

*Andrews v. State*,
   50 Tenn. 165 (1871) ................................................................ 11

*Antonyuk v. Hochul*,
   No. 1:22-cv-00986, 2022 WL 5239895 (N.D.N.Y. Oct. 6, 2022) .................... 7, 8, 9

*Byrdsong v. State*,
   265 S.E.2d 15 (Ga. 1980) .......................................................... 11

*Davenport v. Wash. Educ. Ass'n*,
   551 U.S. 177 (2007) ............................................................... 10

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ........................................................... passim

*Drummond v. Robinson Township*,
   9 F.4th 217 (3d Cir. 2021) ......................................................... 2

*Ezell v. City of Chicago*,
   651 F.3d 684 (7th Cir. 2011) ..................................................... 2, 5

*Friedman v. City of Highland Park*,
   784 F.3d 406 (7th Cir. 2015) ..................................................... 9, 10

*Gould v. Morgan*,
   907 F.3d 659 (1st Cir. 2018) ....................................................... 2

*Hill v. State*,
   53 Ga. 472 (1874) ................................................................ 12

*McDonald v. City of Chicago*,
   561 U.S. 742 (2010) ............................................................ 2, 5, 9

*New York State Rifle & Pistol Ass'n v. Bruen*,
   142 S. Ct. 2111 (2022) ........................................................ passim

*Sockwell v. State*,
   109 S.E. 531 (Ga. Ct. App. 1921) ................................................. 11

*Strickland v. State*,
   72 S.E. 260 (Ga. 1911) ............................................................ 12

*United States v. Greeno*,
   679 F.3d 510 (6th Cir. 2012) ....................................................... 2

*Veasy v. State*,
   62 S.E. 561 (Ga. Ct. App. 1908) .................................................. 11

*Walter v. State*,
   13 Ohio N.P. (n.s.) (Ct. C.P. 1905) .................................................. 12

*Walter v. State*,
   25 Ohio Cir. Dec. 567 (Cir. Ct. 1905) .............................................. 12

**Statutes**

1925 Tex. Crim. Stat. 101 ................................................................... 11

Act of June 4, 2010, 2010 Ga. Laws 963 ............................................ 11

Act of Mar. 30, 1960, ch. 358, 1960 Va. Acts 458 ............................. 11

Act of May 31, 2003, § 1, 2003 Ga. Laws 423 ................................... 11

Act of Sept. 11, 2003, 2004 Mo. Laws 9 ............................................ 11

Ariz. Rev. Stat., Penal Code § 429 (1913) .......................................... 11

Ga. Code § 26-5102 (adopted 1933, effective 1935) ......................... 11

Mo. Rev. Stat. § 564.610 (1959) ......................................................... 11

N.Y. Penal Law § 265.01-e(2)(c) .......................................................... 1

Okla. Stat., ch. 15, art. 90, § 2589 (1931) .......................................... 11

**Other Authorities**

Akhil Reed Amar, *The Bill of Rights: Creation and Reconstruction* (1998)............................. 4, 5

Brief for Independent Institute as Amicus Curiae, *New York State Rifle & Pistol Ass'n v. Bruen*, No. 20-843 (U.S.) ................................................ 6, 8

David B. Kopel & Joseph G.S. Greenlee, *The "Sensitive Places" Doctrine*,
   13 Charleston L. Rev. 205 (2018) ................................................. 6, 8, 9

Kurt T. Lash, *Re-Speaking the Bill of Rights: A New Doctrine of Incorporation*
   (Jan. 15, 2021), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3766917 ................. 4, 5

Kurt T. Lash, *Respealing the Bill of Rights: A New Doctrine of Incorporation*,
   97 Ind. L.J. 1439 (2022)................................................................... 4

Transcript of Oral Argument, *New York State Rifle & Pistol Ass'n v. Bruen*,
   No. 20-843 (U.S.).............................................................................. 6

**INTEREST OF AMICUS CURIAE**

Everytown for Gun Safety ("Everytown") is the nation's largest gun-violence-prevention organization. Everytown has filed more than 50 amicus briefs in Second Amendment and other gun cases, including in challenges to the same New York law at issue here. *See, e.g.*, *Goldstein v. Hochul*, No. 1:22-cv-08300 (S.D.N.Y. Oct. 20, 2022), Dkt. 46.[1]

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiffs challenge the restriction on carrying firearms in "places of worship or religious observation" in New York's Concealed Carry Improvement Act. *See* N.Y. Penal Law § 265.01-e(2)(c) (the "Place of Worship Provision"). That restriction is constitutional under the approach to Second Amendment cases set out in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), for the reasons stated in the State's Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction, Dkt. 40 (State's Mem."), and accompanying Declaration of Patrick J. Charles, Dkt. 40-1 ("Charles Decl.").[2] Everytown submits this amicus brief to expand on two points. *First*, in applying the historical inquiry of the *Bruen* framework— asking whether the regulation is "consistent with the Nation's historical tradition of firearm regulation," 142 S. Ct. at 2130—the Court should center its analysis on 1868, when the Fourteenth Amendment was ratified, not 1791. Moreover, 1868 is not a cutoff; examining "legal and other sources to determine *the public understanding* of a legal text in the period *after* its enactment or ratification" is also "a critical tool of constitutional interpretation." *District of Columbia v. Heller*, 554 U.S. 570, 605 (2008) (second emphasis added). *Second*, although not directly implicated here,

---

[1] No party's counsel authored this brief in whole or part and, apart from Everytown, no person contributed money to fund its preparation or submission.

[2] This amicus brief addresses only aspects of Plaintiffs' claims. The Court should decline to issue a preliminary injunction, as to all defendants, for the reasons in the State's opposition.

given the State's robust historical record, *Bruen*'s analysis reveals that a small number of laws can be sufficient to establish this nation's tradition of firearm regulation, at least so long as there is not overwhelming affirmative evidence of an enduring tradition to the contrary.

## ARGUMENT

### I.   The Proper Focus for Analysis of Historical Regulation Is 1868, Not 1791

In analyzing whether the Place of Worship Provision is "consistent with the Nation's historical tradition of firearm regulation," *Bruen*, 142 S. Ct. at 2130, this Court should first conclude that the most relevant time period for that inquiry centers on 1868, when the Fourteenth Amendment was ratified and made the Second Amendment applicable to the states.

Several circuits reached this conclusion in analyzing state and local laws under the Second Amendment at the first, historical step of the framework that applied prior to *Bruen*.[3] *See Gould v. Morgan*, 907 F.3d 659, 669 (1st Cir. 2018) ("Because the challenge here is directed at a state law, the pertinent point in time would be 1868 (when the Fourteenth Amendment was ratified)."); *Ezell v. City of Chicago*, 651 F.3d 684, 702 (7th Cir. 2011) ("*McDonald* [*v. City of Chicago*, 561 U.S. 742 (2010),] confirms that if the claim concerns a state or local law, the 'scope' question asks how the right was publicly understood when the Fourteenth Amendment was proposed and ratified."); *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012) (following *Ezell*); *see also Drummond v. Robinson Twp.*, 9 F.4th 217, 227 (3d Cir. 2021) ("[T]he question is if the Second *and Fourteenth* Amendments' ratifiers approved [the challenged] regulations ...." (emphasis added)).

---

[3] Between *Heller* and *Bruen*, every federal court of appeals to address the issue concluded that analyzing Second Amendment claims should proceed in two steps: a historical step, in which courts examined whether the challenged law restricted conduct falling within the scope of the Second Amendment, as historically understood; and, if so, a scrutiny step, where courts examined the fit between the government's interest and the challenged law, usually under intermediate scrutiny. *See Bruen*, 142 S. Ct. at 2126-27; *Gould v. Morgan*, 907 F.3d 659, 668 (1st Cir. 2018) (citing cases), *criticized by Bruen*, 142 S. Ct. at 2124, 2126-27.

*Bruen* does not alter that conclusion. The Supreme Court expressly left open the question "whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868"—as opposed to 1791, when the Second Amendment was ratified—"when defining its scope." *Bruen*, 142 S. Ct. at 2138 (explaining that it did not need to resolve issue because public understanding "for all relevant purposes" in case before it was the same in 1791 and 1868). Moreover, *Bruen* concluded that "[s]tep one of the predominant framework [applied in the lower courts] is broadly consistent with *Heller*." *Id.* at 2127. Accordingly, the step-one analyses in the cases just cited remain, as a general matter, good law.

 If this Court prefers to settle the issue the Supreme Court left open in this case, it should conclude that 1868 is the correct focus. To the extent that its decision granting Plaintiffs' motion for a temporary restraining order favored 1791, we respectfully submit that this Court should reconsider that view, for the reasons that follow.

To begin with, in a case involving a state law, focusing on 1868 is the only way to answer the originalist question: How did the people understand the right at the time of its adoption? There was no right to keep and bear arms constraining the states under the U.S. Constitution until 1868; as *Bruen* observed, a state "is bound to respect the right to keep and bear arms because of the Fourteenth Amendment, not the Second." *Id.* at 2137. Thus, when the people chose to extend the Bill of Rights to the states in 1868, *their* understanding of the scope of each right should control the originalist analysis today. In a case against a state, to elevate a founding-era understanding of the right over the Reconstruction-era understanding would be to reject what the people understood the right to be at the time they gave it effect.

To be sure, if the public understanding of the Bill of Rights changed between 1791 and

3

1868, then "[o]riginalists seem," at first glance, to be "forced to either abandon originalism or accept a world in which we have two Bills of Rights, one applicable against the federal government and invested with 1791 meanings and one incorporated against the states and invested with 1868 meanings." Kurt T. Lash, *Respeaking the Bill of Rights: A New Doctrine of Incorporation*, 97 Ind. L.J. 1439, 1441 (2022). But *Bruen* rejected the possibility of different standards for the state and federal governments. *Bruen*, 142 S. Ct. at 2137 ("[W]e have made clear that individual rights enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment have the same scope as against the Federal Government."). Accordingly, originalists must justify applying either the 1868 understanding or the 1791 understanding (where they conflict) to all levels of government.

Existing doctrine does not resolve this choice between 1791 and 1868: *Bruen* noted prior decisions that had "assumed" that the scope for both state and federal governments "is pegged to the public understanding … in 1791." *Id*. But if the majority believed those decisions controlled the issue, it would have said so. Instead, the Court expressly left open the question whether 1868 or 1791 is the relevant focus, and pointed to "ongoing scholarly debate on whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868 when defining its scope (as well as the scope of the right against the Federal Government)." *Id.* at 2138. And the Court then cited two scholars who support the 1868 view, Professors Akhil Amar and Kurt Lash, and none who supports the 1791 view. *See id.* (citing Akhil Reed Amar, *The Bill of Rights: Creation and Reconstruction* xiv, 223, 243 (1998), and Kurt T. Lash, *Re-Speaking the Bill of Rights: A New Doctrine of Incorporation* (Jan. 15, 2021) (manuscript, at 2), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3766917 (now published at 97 Ind. L.J. 1439)).

4

On Professor Amar's account, when the Fourteenth Amendment was ratified, then-contemporary understandings of incorporated rights could transform their meaning not only against the states, but also as to the federal government.[4] More recently, Professor Lash wrote—as quoted in *Bruen*—"When the people adopted the Fourteenth Amendment into existence, they readopted the original Bill of Rights, and did so in a manner that invested those original 1791 texts with new 1868 meanings." Lash, manuscript, at 2. On this view, too, 1868 meanings bind both the state and federal governments.

There is good reason for this to be the leading originalist view: insisting that the 1791 understanding should apply against the states does not make sense in light of the Supreme Court's lengthy analysis in *McDonald* of the understanding of the right to keep and bear arms around 1868. *See* 561 U.S. at 770-78 (plurality opinion); *id.* at 826-38 (Thomas, J., concurring in part and concurring in the judgment). It would be extraordinary if the public understanding of the right in 1868 were so central to *whether* the right was incorporated against the states, but irrelevant to *what* right was incorporated. That is presumably why the Seventh Circuit, in an opinion by Judge Sykes, reads *McDonald* to have "confirm[ed] that when state- or local-government action is challenged, the focus of the original-meaning inquiry is carried forward in time; the Second Amendment's scope as a limitation on the States depends on how the right was understood when the Fourteenth Amendment was ratified." *Ezell*, 651 F.3d at 702.

---

[4] *See* Amar, *The Bill of Rights*, at xiv (account is "attentive to the possibility" that a "particular principle in the Bill of Rights may change its shape in the process of absorption into the Fourteenth Amendment"); *id.* at 223 ("[W]hen we 'apply' the Bill of Rights against the states today, we must first and foremost reflect on the meaning and spirit of the amendment of 1866, not the Bill of 1789. … [I]n the very process of being absorbed into the Fourteenth Amendment, various rights and freedoms of the original Bill may be subtly but importantly transformed[.]"); *id.* at 243 (arguing that "the Fourteenth Amendment has a doctrinal 'feedback effect' against the federal government"); *see also id.* at 283 ("[W]ords inserted into the Constitution in 1791 must be read afresh after 1866.").

Any claim that the founding era is the only relevant period is also inconsistent with the passage in *Bruen* instructing the lower courts on historical methodology through the example of sensitive places restrictions. There, the Court indicated that restrictions on guns in legislative assemblies, polling places, and courthouses found in "18th- *and 19th-century*" laws are adequate to satisfy its historical analysis, 142 S. Ct. at 2133 (emphasis added)—an incomprehensible statement if it believed that the 18th century was the only relevant period. Notably, in the pages of the article and brief the Court cited for that proposition, all the 19th-century laws restricting guns in any of the three locations the Court listed were from the *late* 19th century.[5]

Finally, further confirmation that 1868 is the correct focus occurred in the *Bruen* oral argument, where the following exchange took place between Justice Thomas and former Solicitor General Paul Clement as counsel for the NRA's New York affiliate:

> JUSTICE THOMAS: [Y]ou mentioned the founding and you mentioned post-Reconstruction. But, if we are to analyze this based upon the history or tradition, should we look at the founding, or should we look at the time of the adoption of the Fourteenth Amendment, which then, of course, applies it to the states?
>
> MR. CLEMENT: So, Justice Thomas, I suppose, if there were a case where there was a contradiction between those two, you know, and the case arose in the states, I would think there would be a decent argument for looking at the history at the time of Reconstruction … and giving preference to that over the founding.

Tr. of Oral Arg. at 8, *Bruen* (No. 20-843).

In sum, any historical inquiry this Court chooses to conduct should focus on the period around 1868, not 1791. Moreover, 1868 is not a cutoff; *Heller* instructs that "examination of a

---

[5] *See* David B. Kopel & Joseph G.S. Greenlee, *The "Sensitive Places" Doctrine*, 13 Charleston L. Rev. 205, 244-47 (2018) (citing 1870 Louisiana law, 1874 and 1886 Maryland laws, 1873 Texas law, and 1874 decision upholding 1870 Georgia law); Br. for Indep. Inst. as Amicus Curiae at 11-17, *Bruen* (No. 20-843) (disputing relevance of 19th-century laws but (at 16 n.10) citing 1869 Tennessee, 1870 Texas, and 1890 Oklahoma laws that prohibited guns in (among others) polling places).

variety of legal and other sources to determine *the public understanding* of a legal text in the period *after* its enactment or ratification" is also "a critical tool of constitutional interpretation." 554 U.S. at 605 (second emphasis added); *see also Bruen*, 142 S. Ct. at 2127-28 (quoting same). *Bruen* clarified that, under this passage in *Heller*, materially later history that *contradicts* the established original meaning of the constitutional text at the relevant point in time would not change that meaning. *See* 142 S. Ct. at 2136-37 & 2154 n.28. But it emphasized that, conversely, "a regular course of practice can liquidate [and] settle the meaning of disputed or indeterminate terms [and] phrases in the Constitution." *Id.* at 2136 (cleaned up) (quoting decision quoting James Madison).

Here, state and local laws from the second half of the 19th century and early 20th century establish the meaning of the right to keep and bear arms at the time of the Fourteenth Amendment's adoption, and demonstrate the constitutionality of New York's law. *See, e.g.*, State's Mem. at 13-19; Charles Decl. ¶¶ 17-21; *infra* pp. 11-12. And even if this Court were to conclude (contrary to the scholars the Supreme Court cited) that the relevant date is 1791, not 1868, it should then consider this later historical evidence and recognize that this evidence "settle[s] the meaning of" the right as one that allows for New York's regulation.

The foregoing points are in accord with the approach taken most recently by the only other court so far to have ruled on the Place of Worship Provision. The district court in *Antonyuk v. Hochul* (*Antonyuk II*), No. 1:22-cv-00986, 2022 WL 5239895 (N.D.N.Y. Oct. 6, 2022), held that "it is permissible for New York State to *generally* restrict concealed carry in 'any place of worship or religious observation.'" *Id.* at *15.[6] In reaching that conclusion, the court relied on laws from

---

[6] The court stated that this "general[]" principle should be limited by an exception for "persons who have been tasked with the duty to keep the peace at the place of worship," *Id.* at *15, which the State explains largely tracks the existing exception for registered security guards and others, *see* State's Mem. at 13 n.7.

7

1870 through 1890. *See* 2022 WL 5239895, at *15 n.25.[7] Such Reconstruction-era laws amply establish that New York's law is consistent with this nation's tradition of firearms regulation.

## II.    The State's Historical Analogues Are Not "Outliers," and *Bruen* Does Not Require Proof of "Continuity"

In its decision granting Plaintiffs a temporary restraining order, this Court held that the State had not sufficiently established a historical tradition, both because the laws it identified were too few, and because it had not proven "continuity." *See* Dkt. 35 at 34. We respectfully submit that neither basis is consistent with *Bruen* and that the Court should reconsider those points. In fact, *Bruen*'s discussion of the historical laws justifying sensitive places demonstrates both that a small number of laws can establish a tradition and that proof of "continuity" is not required.

Specifically, *Bruen* repeated *Heller*'s identification of "schools and government buildings" as sensitive places, 142 S. Ct. at 2133 (quoting *Heller*, 554 U.S. at 626), and then recognized that three additional, more specific locations (legislative assemblies, polling places, and courthouses) were also "'sensitive places' where arms carrying could be prohibited consistent with the Second Amendment," *id.* But the sources the Court cited for the historical record justifying restrictions in those three locations identified *only two laws* naming legislative assemblies and *two laws* naming courthouses. *See* Kopel & Greenlee, 13 Charleston L. Rev. at 235, 246; Br. for Indep. Inst. as Amicus Curiae at 11-12, *Bruen* (No. 20-843). Moreover, the two laws both sources cited as prohibiting guns in legislative assemblies in the pages the Court referenced were from a single state, Maryland, and were enacted three years apart, in 1647 and 1650. *See* Kopel & Greenlee, 13 Charleston L. Rev. at 235; Br. for Indep. Inst. as Amicus Curiae at 11-12, *Bruen* (No. 20-843).[8]

---

[7] Like the State, Everytown disagrees with many other aspects of the decision. *See* State's Mem. at 13 n.7.

[8] Notably, one of the Court's sources stated that, "[i]n general, Americans did not seem to mind people coming armed to attend or participate in legislative matters. The United States

Under *Bruen*'s sensitive places analysis, therefore, a small number of laws can be sufficient to establish this nation's tradition of firearm regulation, at least so long as there is not overwhelming affirmative evidence of an enduring tradition to the contrary. *Cf. Antonyuk II*, 2022 WL 5239895, at *9 (looking to "three or more historical analogues from states" as constituting a tradition).[9] And nothing in *Bruen*'s sensitive places analysis suggests that a government must establish "continuity" of a location restriction across time before the Supreme Court will assume it "settled" that guns may be prohibited in that location. Indeed, its approval of prohibitions in legislative assemblies on the basis of two laws in a three-year span indicates the opposite.

Concluding that a small number of state laws can demonstrate a "public understanding" of a limitation on the Second Amendment right is also consistent with bedrock federalism principles that entitle a state to effectuate the policy choice of its citizens within constitutional bounds. Local conditions matter. Just as states today may (or may choose not to) "experiment[] with reasonable firearms regulations," *McDonald*, 561 U.S. at 785 (plurality opinion) (cleaned up), states historically may have chosen not to regulate certain weapons, people, or conduct, not because the public understood the right to keep and bear arms to prevent such regulations, but because of democratically supported policy choices. As Judge Easterbrook explained in *Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir. 2015), "the Constitution establishes a federal republic where local differences are cherished as elements of liberty, rather than eliminated in a search for

---

Congress had no rules against legislative armament, and through the mid-nineteenth century, it was common for Congressmen to be armed." Kopel & Greenlee, 13 Charleston L. Rev. at 235. Accordingly, the Court's reliance on this source further confirms that widespread acceptance of a practice of carrying guns as a matter of policy does not indicate that the practice was constitutionally protected. *See also infra* pp. 9-10 (explaining that to infer constitutional protection from absence of regulation would run against basic principles of federalism).

[9] To be sure, *Bruen* expressed "doubt" that three colonial regulations "could suffice to show a tradition." 142 S. Ct. at 2142. But that tentative statement should not be given undue weight— as *Antonyuk II* implicitly recognized—given the Supreme Court's discussion of sensitive places.

national uniformity," and "[t]he central role of representative democracy is no less part of the Constitution than is the Second Amendment." *Id.* at 412. And the fact that states have latitude to experiment with regulations that meet their unique needs means that states historically may well have chosen not to regulate to the limits of constitutional permissibility. *Cf., e.g.*, *Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 185 (2007) ("The constitutional floor [by which the First Amendment restricts public-sector] unions' collection and spending of agency fees is not also a constitutional ceiling for state-imposed restrictions."). Accordingly, while state laws restricting firearms demonstrate that the people of those states understood the right to keep and bear arms to permit such restrictions, the absence of such laws in other states does not warrant any inference that their citizens considered such restrictions unconstitutional.

Furthermore, the primary originalist inquiry asks how the public understood the scope of the right "*when* the people adopted" it, *Heller*, 554 U.S. at 634-35 (emphasis added)—not over some unspecified period of continuous time. Certainly, evidence from before, during, or after 1868 can all help demonstrate how the public understood the right in 1868. *See, e.g.*, *id.* at 605 ("[E]xamination of a variety of legal and other sources to determine *the public understanding* of a legal text in the period after its enactment or ratification … is a critical tool of constitutional interpretation."); *see also supra* pp. 6-8. But nothing in *Heller*, *Bruen*, or originalist principles says that the understanding at the time of adoption must also be a "continu[ous]" one.[10]

---

[10] The only passage in *Bruen* that supports examining "continuity" is its recognition that "a *regular course of practice* can liquidate [and] settle the meaning of disputed or indeterminate terms [and] phrases in the Constitution." *Bruen*, 142 S. Ct. at 2136 (cleaned up) (emphasis added). But this only comes into play if evidence from around the period of ratification has left the meaning of the right to keep and bear arms "disputed or indeterminate." Here, evidence from around 1868 demonstrates that the public understood restrictions on guns in churches to be consistent with the right to keep and bear arms. But, as explained, *supra* p. 7, even if the Court believed that 1791 were the correct focus, and believed that the evidence in that period was insufficient, it should consider the laws from the second half of the 19th century and the early 20th century, as well as

Nevertheless, even if the requirement to show consistency with this nation's historical tradition of firearms regulation also demands continuity over time, the historical record and case law establish that. As the State notes, prohibitions on firearms in churches find their roots in centuries-old English laws. *See* State's Mem. at 14 n.9; Charles Decl. ¶¶ 13-14. And the U.S. prohibitions the State identified persisted for decades. *See, e.g.*, Act of May 31, 2003, § 1, 2003 Ga. Laws 423  (misdemeanor to carry any firearm "at a public gathering," defined as "includ[ing], but not limited to, … churches or church functions"); *Byrdsong v. State*, 265 S.E.2d 15, 16 (Ga. 1980) (setting out statutory language, including as to churches, in case concerning firearm in bar); Ga. Code § 26-5102 (adopted 1933, effective 1935) (similar statutory language to original 1870 prohibition); *Sockwell v. State*, 109 S.E. 531 (Ga. Ct. App. 1921) (affirming conviction for carrying pistol at place of public worship); *Veasy v. State*, 62 S.E. 561, 562 (Ga. Ct. App. 1908) (same); *see also, e.g.*, 1925 Tex. Crim. Stat. 101 (similar to 1870 original); Mo. Rev. Stat. § 564.610 (1959) (similar to 1874 original); Act of Mar. 30, 1960, ch. 358, 1960 Va. Acts 458 (similar to 1877 original); Okla. Stat., ch. 15, art. 90, § 2589 (1931) (state law, similar to 1890 territorial original); Ariz. Rev. Stat., Penal Code § 429 (1913) (state law, similar to 1889 territorial original).[11]

Caselaw also demonstrates a continuity of understanding that the right to keep and bear arms does not prevent states from prohibiting guns in places of worship. In the 1870s, the Supreme Courts of both Tennessee and Georgia thought it self-evident that a legislature could

---

the evidence set out in the following paragraph, as "settl[ing]" the meaning of the right.

[11] In its decision granting Plaintiffs a temporary restraining order, this Court noted that Georgia and Missouri law "apparently evolved … to allow church leaders to decide the issue for their own churches." Dkt. 35 at 34 n.19. But the article this Court cited for that proposition was discussing Georgia and Missouri provisions that date back only until 2010 and 2003, respectively. *See* Act of June 4, 2010, 2010 Ga. Laws 963, 966-67; Act of Sept. 11, 2003, 2004 Mo. Laws 9, 19.

constitutionally enact such a prohibition. *See Andrews v. State*, 50 Tenn. 165, 181-82 (1871) (rejecting government's argument that, if the court held it could not prohibit carry entirely, it would mean that "the citizen may carry [arms] at all times and under all circumstances," and illustrating government's continued power to regulate with example that "a man may well be prohibited from carrying his arms to church");[12] *Hill v. State*, 53 Ga. 472, 475 (1874) ("The practice of carrying arms at courts, elections and places of worship, etc., is a thing so improper in itself, so shocking to all sense of propriety, so wholly useless and full of evil, that it would be strange if the framers of the constitution have used words broad enough to give it a constitutional guarantee."). Thirty-seven years after the Georgia decision, the same court found that principle just as self-evident. *See Strickland v. State*, 72 S.E. 260, 264 (Ga. 1911) ("Surely no one will contend that children have a constitutional right to go to school with revolvers strapped around them, or that men and women have a right to go to church, or sit in the courtrooms, or crowd around election precincts, armed like desparadoes, and that this is beyond the power of the Legislature to prevent."); *see also, e.g.*, *Walter v. State*, 13 Ohio N.P. (n.s.) (Ct. C.P. 1905) ("[T]he state legislatures … have provided many limitations [on arms]. For example, it has been provided that … no one shall carry weapons either concealed or unconcealed, into a court of justice, or into a church, or into a voting place or within a mile thereof, and all these have been held to be valid restrictions upon the manner in which arms may be used."), *aff'd*, 25 Ohio Cir. Dec. 567 (Cir. Ct. 1905) ( "Th[e] right [to bear arms] is not infringed by reasonab[l]e police regulations designed to promote the peace and well-being of society, such for example as those that prohibit carrying fire arms into churches, courthouses, theaters and polling places.").[13]

---

[12] The Supreme Court discussed *Andrews* with approval in both *Heller*, 554 U.S. at 608, 614, 629, and *Bruen*, 142 S. Ct. at 2147, 2155.

[13] Notably, *Hill*, *Strickland*, and *Walter* all coupled churches with places in which the

**CONCLUSION**

The Court should deny Plaintiffs' motion for a preliminary injunction.

Dated: October 28, 2022                    Respectfully submitted,

<u>/s/ William J. Taylor, Jr.</u>
William J. Taylor, Jr.
Everytown Law
450 Lexington Avenue, #4184
New York, NY 10017
wtaylor@everytown.org
(646) 324-8215
*Counsel for Amicus Curiae*
*Everytown for Gun Safety*

---

Supreme Court has already specifically observed that firearms may be prohibited: courthouses, polling places, and schools.

# APPENDIX OF HISTORICAL LAWS

|   | Law | Appendix page(s) |
|---|---|---|
| 1 | Ariz. Rev. Stat., Penal Code § 429 (1913) | A5-6 |
| 2 | 1925 Tex. Crim. Stat. 101 | A10 |
| 3 | Okla. Stat., ch. 15, art. 90, § 2589 (1931) | A14-15 |
| 4 | Ga. Code § 26-5102 (adopted 1933, effective 1935) | A18-19 |
| 5 | Mo. Rev. Stat. § 564.610 (1959) | A22 |
| 6 | Act of Mar. 30, 1960, ch. 358, 1960 Va. Acts 458 | A28 |
| 7 | Act of May 31, 2003, 2003 Ga. Laws 423[1] | A31-32 |
| 8 | Act of Sept. 11, 2003, 2004 Mo. Laws 9, 19[2] | A35, A45 |
| 9 | Act of June 4, 2010, 2010 Ga. Laws 963, 966-67[3] | A55-56 |

---

[1] Westlaw version showing both additions and deletions is available at
https://www.westlaw.com/Document/IE69463FEC6A847F7A346C8205DF28403/View/FullText.html?transitionType=Default&contextData=(sc.Default)&VR=3.0&RS=cblt1.0.
[2] Westlaw version showing both additions and deletions is available at
https://www.westlaw.com/Document/I524846E0EB9211D7B371B02C62710964/View/FullText.html?transitionType=Default&contextData=(sc.Default)&VR=3.0&RS=cblt1.0.
[3] Westlaw version showing both additions and deletions is available at
https://www.westlaw.com/Document/I1312AF20759611DFA003CD0B1E97E725/View/FullText.html?transitionType=Default&contextData=(sc.Default)&VR=3.0&RS=cblt1.0.

# BY AUTHORITY OF THE LEGISLATURE

# THE

# REVISED STATUTES

## OF

# ARIZONA

## 1913.

## PENAL CODE.

COMPILED BY

SAMUEL L. PATTEE

CODE COMMISSIONER

PHOENIX, ARIZONA
THE McNEIL COMPANY
1913

A1

COPYRIGHT, 1913
By the
STATE OF ARIZONA.

Sec. 1, Ch. 63, Laws 1912, Reg. Sess.

**408.** It shall be unlawful for any person or persons to tamper with, alter, change or remove any switch light or fixed signal used on any line of railway in this state; provided, however, that this provision shall not apply to any person or persons who within the scope of his employment is required to care for said switch light or fixed signal. Any person or persons who shall violate any of the provisions of this section shall be deemed guilty of a felony and upon conviction thereof shall be fined a sum not less than one hundred dollars and not more than five thousand dollars, or shall be imprisoned in the state prison for a term not exceeding twenty years, or shall be punished by both such fine and imprisonment.

Sec. 362, P. C. 1901.

**409.** Any persons who sells, gives, rents, barters or furnishes rifles, carbines, pistols or revolvers, or any ammunition or cartridges for rifles, carbines, pistols or revolvers, or any shot larger in size than standard number six shot, to Indians, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be punished by imprisonment in the county jail not less than one nor more than six months, or by a fine not less than fifty dollars nor more than three hundred dollars, or by both such fine and imprisonment.

Sec. 366, id.

**410.** It shall be unlawful for any person to dig up, cut, open, or destroy the pipe, pipes or any man-hole of any sewer or sewer system used by the public in this state, or in any manner to impede the flow of the sewage conducted thereby and therein or to interfere with the operation of said sewer or sewer system, without the permission of the management operating said sewer or sewer system.

Sec. 367, id.

**411.** Any person who shall violate any provision of the preceding section shall be guilty of a misdemeanor.

---

# TITLE XII

## OF CRIMES AGAINST THE PUBLIC PEACE.

Sec. 368, P. C. 1901.
Sec. 403, P. C. Cal. as modified.

**412.** Every person who, without authority of law, wilfully disturbs or breaks up, or attempts to disturb or break up any assembly or meeting not unlawful in its character, is guilty of a misdemeanor.

Sec. 369, P. C. 1901.
Sec. 404, P. C. Cal.

**413.** Any use of force or violence disturbing the public peace, or any threat to use such force or violence, if accompanied by immediate power of execution, by two or more persons acting together, and without authority of law, is a riot.

**414.** Every person who participates in any riot is punishable by imprisonment in the state prison not exceeding two years, or by fine not exceeding two thousand dollars, or both.

Sec. 370, P. C. 1901.
Sec. 405, P. C. Cal.

**415.** Whenever two or more persons, assembled and acting together, make any attempt or advance toward the commission of an act which would be a riot if actually committed, such assembly is a rout.

Sec. 371, P. C. 1901.
Sec. 406, P. C. Cal.

**416.** Whenever two or more persons assembled together to do an unlawful act, and separate without doing, or advancing toward it, or do a lawful act in a violent, boisterous, tumultuous manner, such assembly is an unlawful assembly.

Sec. 372, P. C. 1901.
Sec. 407, P. C. Cal.

**417.** Every person who participates in any rout or unlawful assembly, is guilty of a misdemeanor.

Sec. 373, P. C. 1901.
Sec. 408, P. C. Cal.

**418.** Every person remaining present at the place of any riot, rout or unlawful assembly, after the same has been lawfully warned to disperse, except public officers and persons assisting them in attempting to disperse the same, is guilty of a misdemeanor.

Sec. 374, P. C. 1901.
Sec. 409, P. C. Cal.

**419.** If a magistrate or officer, having notice of an unlawful or riotous assembly mentioned in this chapter, neglects to proceed to the place of assembly, or as near thereto as he can with safety, and to exercise the authority with which he is vested for suppressing the same and arresting the offenders, he is guilty of a misdemeanor.

Sec. 375, P. C. 1901.
Sec. 410, P. C. Cal.

**420.** A person who, after the publication of the proclamation by the governor declaring a county to be in a state of insurrection, resists or aids in resisting the execution of process in any county declared to be in a state of insurrection, or who aids or attempts the rescue or escape of another from lawful custody or confinement, or who resists, or aids in resisting, any force ordered out by the governor to quell or suppress an insurrection, is punishable by imprisonment in the state prison not less than two years.

Sec. 376, P. C. 1901.
Sec. 413, Cal. as modified.

**421.** Every person who engages in, instigates, encourages or promotes any ring or prize fight, or any other premeditated fight or contention (without deadly weapons), either as principal, aid, second, umpire, surgeon, or otherwise, is punishable by imprisonment in the state prison not exceeding two years.

Sec. 377, P. C. 1901.

**422.** Every person who leaves this state with intent to evade any of the provisions of the preceding section, and to commit any act out of this state such as is prohibited therein, and who does any act which would be punishable under these provisions if committed within the state, is punishable in the same manner as he would have been in case such act had been committed within this state.

Sec. 378, P. C. 1901.

**423.** Every person who maliciously and wilfully disturbs the peace or quiet of any neighborhood, family or person by loud or unusual noise, or by tumultuous or offensive conduct, or by threatening, traducing, quarreling, challenging to fight or fighting, or who applies any

Sec. 379, P. C. 1901.

violent or abusive or obscene epithets to another, is punishable by fine not exceeding two hundred dollars, or by imprisonment in the county jail for not exceeding two months.

Sec. 380, P. C. 1901.
Sec. 416, P. C. Cal.

**424.** If two or more persons assemble for the purpose of disturbing the public peace, or committing any unlawful act, and do not disperse on being desired or commanded so to do by a public officer, the persons so offending are severally guilty of a misdemeanor.

Sec. 381, P. C. 1901.

**425.** Any person who shall, purposely or carelessly, discharge any gun, pistol or other firearm in any saloon, dance house, store or other public house or business house in this state, thereby endangering the life or person of another, or thereby disturbing any of the inmates thereof, or who shall thereby injure, destroy or damage any property therein, or who shall discharge the same in any city or town of this state, except in necessary self defense, shall be fined in any sum not exceeding three hundred dollars, or be imprisoned in the county jail for a period not exceeding six months or shall be punished by both such fine and imprisonment.

Sec. 382, P. C. 1901.

**426.** It shall be unlawful for any person (except a peace officer in actual service and discharge of his duty), to have or carry concealed on or about his person, any pistol or other firearm, dirk, dagger, slung-shot, sword-cane, spear, brass knuckles, or other knuckles of metal, bowie-knife or any kind of knife or weapon, except a pocket knife, not manufactured and used for the purpose of offense and defense.

Sec. 383, P. C. 1901.

**427.** Any person violating any of the provisions of the preceding section shall be guilty of a misdemeanor, and may be arrested with or without a warrant, either in the day-time or night-time, and taken before the nearest justice of the peace for trial; and any peace officer who shall fail, neglect or refuse to arrest any such person on his own knowledge of the violation of said section, or upon the information from some credible person, or who shall appoint any person a deputy, not intended to be used in regular service, but as a mere pretext for the purpose of carrying a concealed weapon, shall be guilty of a misdemeanor.

Sec. 384, P. C. 1901.

**428.** Any person found guilty of violating any of the provisions of the two preceding sections shall be punished by a fine of not less than twenty nor more than three hundred dollars and shall be imprisoned in the county jail for not less than ten nor more than thirty days.

Sec. 387, id.

**429.** If any person shall go into church or religious assembly, any school room or other place where persons are assembled for amusement or for educational or scientific purposes, or into any circus, show, or public exhibition of any kind, or into a ball room or social party or social gathering, or to any election precinct, on the day or days of any election, where any portion of the people of this state are

collected to vote at an election, or to any other place where people may be assembled to minister or to perform any other public duty, or to any other public assembly, and shall have or carry about his person a pistol or other firearm, dirk, dagger, sword-cane, brass knuckles, bowie knife or any other kind of a knife manufactured and sold for the purpose of offense or defense, he shall be punished by a fine not less than fifty nor more than five hundred dollars, and shall forfeit to the county the weapon or weapons so found on his person.

**430.** The preceding sections shall not apply to peace officers or other persons authorized or permitted by law to carry arms at the places therein designated. <span style="float:right">Sec. 388, P. C. 1901.</span>

**431.** Persons traveling may be permitted to carry arms within settlements or towns of the state, for one-half hour after arriving in such settlements or towns, and while going out of such towns or settlements; and sheriffs and constables of the various counties of this state and their lawfully appointed deputies may carry weapons in the legal discharge of the duties of their respective offices. <span style="float:right">Sec. 390, P. C. 1901.</span>

**432.** Every person who, not in necessary self-defense, in the presence of two or more persons, draws or exhibits any deadly weapon in a rude, angry, or threatening manner, or who, in any manner, unlawfully uses the same in any fight or quarrel, is guilty of a misdemeanor. <span style="float:right">Sec. 392, P. C. 1901. Sec. 417, P. C. Cal.</span>

**433.** Every person using or procuring, encouraging or assisting another to use, any force or violence in entering upon or detaining any lands or other possessions of another, except in the cases and in the manner allowed by law, is guilty of a misdemeanor. <span style="float:right">Sec. 393, P. C. 1901. Sec. 418, P. C. Cal.</span>

**434.** Every person who has been removed from any lands by process of law, or who has removed from any land pursuant to the lawful adjudication or direction of any court, tribunal, or officer, and who afterwards unlawfully returns to settle, reside upon or take possession of such lands, is guilty of a misdemeanor. <span style="float:right">Sec. 394, P. C. 1901. Sec. 419, P. C. Cal.</span>

**435.** Every person who goes upon or boards any railroad train, car or engine, with the intention of robbing any passenger or other person on such train, car or engine, of any personal property thereon in the possession or care or under control of any such passenger or other person, or who interferes in any manner with any switch, rail, sleeper, viaduct, culvert, embankment, structure or appliance pertaining to or connected with any railroad, or places any dynamite or other explosive substance or material upon or near the track of any railroad, or who sets fire to any railroad bridge or trestle, or who shows, masks, extinguishes or alters any light or other signal, or exhibits or compels any other person to exhibit any false light or signal, or who stops any such train, car or engine, or slackens the speed thereof, or who compels or attempts to compel any person in charge or control thereof to stop any such train, car or engine, or slacken <span style="float:right">Sec. 214, P. C. Cal.</span>

the speed thereof, with the intention of robbing any passenger or other person on such train, car or engine, of any personal property thereon in the possession or charge or under the control of any such passenger or other person, is guilty of a felony.

Sec. 218, id.    **436.**   Every person who unlawfully throws out a switch, removes a rail, or places any obstructions on any railroad with the intention of derailing any passenger, freight or other train, car or engine, or who unlawfully places any dynamite or other explosive material or any other obstruction upon or near the track of any railroad with the intention of blowing up or derailing any such train, car or engine, or who unlawfully sets fire to any railroad bridge or trestle, over which any such train, car or engine must pass, with the intention of wrecking such train, car or engine, is guilty of a felony.

Sec. 219, id.    **437.**   Every person who unlawfully throws out a switch, removes a rail, or places any obstruction on any railroad with the intention of derailing any passenger, freight or other train, car or engine and thus derails the same, or who unlawfully places any dynamite or other explosive material or any other obstruction upon or near the track of any railroad with the intention of blowing up or derailing any such train, car or engine and thus blows up or derails the same, or who unlawfully sets fire to any railroad bridge or trestle over which any such train, car or engine must pass, with the intention of wrecking such train, car, or engine, and thus wrecks the same, is guilty of a felony.

New section.    **438.**   Any person violating any of the provisions of the three preceding sections shall be punished by death, or by imprisonment in the state prison for not less than ten years, at the discretion of the jury trying the case, or of the court upon a plea of guilty.

---

# TITLE XIII

## OF CRIMES AGAINST THE REVENUE AND PROPERTY OF THE STATE.

Sec. 398, P. C. 1901. as amended by Chap. 4, Sp. Sess. Laws 1912.    **439.**   Every officer of the state or of any county, city, town or district of this state, and every other person charged with the receipt, safe-keeping, transfer or disbursement of public moneys, who either:

(1.)   Without authority of law, appropriates the same, or any portion thereof, to his own use, or to the use of another; or,

(2.)   Loans the same, or any portion thereof; or,

# PENAL CODE

OF THE

# STATE OF TEXAS

---

ADOPTED AT THE REGULAR SESSION OF THE
THIRTY-NINTH LEGISLATURE

1925



**PUBLISHED BY AUTHORITY OF THE STATE OF TEXAS**



A. C. BALDWIN & SONS
STATE PRINTERS
AUSTIN

hawker of goods or merchandise who enters upon premises owned or leased by another and wilfully refuses to leave said premises after having been notified by the owner or possessor of said premises, or his agent, to leave the same, shall be fined not less than one nor more than twenty-five dollars. [Acts 1913, p. 142.]

Art. 480.   [473] [336]   **Shooting in public place.**—Any person who discharges any gun, pistol or firearm of any kind, or discharges any cannon cracker or torpedo on or across any public square, street or alley of any town or city or within one hundred yards of any business house in this State shall be fined not more than one hundred dollars.   A "cannon cracker" is any combustible package more than two inches long and more than one inch through.   [Acts 1901, p. 300.]

Art. 481.   [474] [337]   **Horse racing on road or street.**—Whoever shall run or be in any way concerned in running any horse race in, along or across any public road or any public square, street or alley in any city, town or village, shall be fined not less than twenty-five nor more than one hundred dollars.

Art. 482.   [1020] [599]   **Abusive language.**—Any person who shall in the presence or hearing of another curse or abuse such person, or use any violently abusive language to such person concerning him or any of his female relatives, under circumstances reasonably calculated to provoke a breach of the peace, shall be fined not more than one hundred dollars.   [Acts 1887, p. 13.]

# CHAPTER FOUR.

## UNLAWFULLY CARRYING ARMS.

|  | Article |  | Article |
|---|---|---|---|
| Unlawfully carrying arms | 483 | Not applicable to whom | 486 |
| Not applicable | 484 | Arrest without warrant | 487 |
| Carrying arms in church or other |  | While possessing narcotics | 488 |
| assembly | 485 | Sale of weapon to minor | 489 |

Art. 483.   [475] [338] [318]   **Unlawfully carrying arms.**—Whoever shall carry on or about his person, saddle, or in his saddle bags any pistol, dirk, dagger, slung-shot, sword cane, spear or knuckles made of any metal or any hard substance, bowie knife, or any other knife manufactured or sold for the purposes of offense or defense, shall be punished by fine not less than $100.00 nor more than $500.00, or by confinement in jail for not less than one month nor more than one year. [Acts 1887, p. 6.   Acts 1905, p. 56.   Acts 1918, p. 194.]

Art. 484.   [476] [339] [319]   **Not applicable.**—The preceding article shall not apply to a person in actual service as a militiaman, nor to any peace officer in the actual discharge of his official duty, nor to the carrying of arms on one's own premises or place of business, nor to persons traveling, nor to any deputy constable, or special policeman who receives a compensation of forty dollars or more per month for his services as such officer, and who is appointed in corformity with the statutes authorizing such appointment; nor to the Game, Fish and Oyster Commissioner, nor to any deputy, when in the actual discharge

of his duties as such, nor to any game warden, or local deputy
Game, Fish and Oyster Commissioner when in the actual dis-
charge of his duties in the county of his residence, nor shall it
apply to any game warden or deputy Game, Fish and Oyster
Commissioner who actually receives from the State fees or com-
pensation for his services.  [Acts 1871, p. 25, Acts 1918, p. 194.]

Art. 485.  [477] [340]  **Carrying arms in any assembly.—**
If any person shall go into any church or any religious assembly,
any schoolroom, ballroom, or other place where persons are as-
sembled for amusement or for educational or scientific purposes,
or into any circus, show or public exhibition of any kind, or
social gathering, or to any election on the day or days of any
election where any portion of the people of this State are col-
lected to vote at an election, or to any other place where people
may be assembled to muster or perform any other public du-
ties, and shall have or carry about his person any pistol or other
firearm, dirk, dagger, slung shot, sword cane, spear, brass
knuckle, bowie knife, or any other kind of a knife made and
manufactured for the purpose of offense and defense, he shall
be fined not less than one hundred nor more than five hundred
dollars, or be confined in jail not less than thirty days nor more
than twelve months, or both.  [Acts 1871, p. 25; Acts 1915, p.
132.]

Art. 486.  [478] [341]  **Not applicable to whom.—**The pre-
ceding article shall not apply to peace officers or other persons
authorized or permitted by law to carry arms at the places
therein designated.  [Acts 1871, p. 25.  Revision of 1879.]

Art. 487.  [479] [342]  **Arrest without warrant.—**Any per-
son violating any article of this chapter may be arrested with-
out warrant by any peace officer and carried before the nearest
justice of the peace.  Any peace officer who shall fail or refuse
to arrest such person on his own knowledge, or upon informa-
tion from some reliable person, shall be fined not exceeding five
hundred dollars.  [Acts 1871, p. 26.]

Art. 488.  **Dope seller carrying arms.—**Whoever shall carry
on or about his person a pistol or any other weapon or arm men-
tioned in the first article of this chapter while possessing for the
purpose of unlawful sale, furnishing or giving away any drug,
narcotic, derivative or preparation or marijuana mentioned in
article 720 of this Code, shall be confined in the penitentiary for
not less than one nor more than ten years.  [Act June 18, 1923,
p. 164.]

Art. 489.  [1048]  **Sale of weapon to minor. —** Whoever
shall knowingly sell, give or barter, or cause to be sold, given or
bartered to any minor a pistol or any other weapon or arm men-
tioned in the first article of this chapter, without the written
consent of the parent or guardian of such minor, or of some
one standing in lieu thereof, shall be fined not less than twenty-
five nor more than two hundred dollars, or be imprisoned in jail
not less than ten nor more than thirty days, or both.  [Acts
1897, p. 221.]

# OKLAHOMA STATUTES 1931

Compiled and Annotated by
FRANK O. EAGIN AND C. W. VAN EATON
of the Oklahoma State Bar

---

Approved by
OKLAHOMA CODE COMMISSION
WILLIAM H. MURRAY, Governor, Chairman

| | |
|---|---|
| W. G. STIGLER | DON W. WALKER |
| CHARLES A. MOON | EDGAR A. DE MEULES |
| CARLTON WEAVER | ALGER MELTON |

## VOLUME I

## CODES AND GOVERNMENT

HARLOW PUBLISHING COMPANY
Oklahoma City
1932

Copyright 1931 by
Harlow  Publishing  Co.

Second Printing

A12

Third: Any person who strolls about to tell fortunes or to exhibit tricks not licensed by law.

Fourth: Any common prostitute, any manager or controller of a house of prostitution or ill-fame or any one employed therein as barkeeper, caller of figures for dances, or habitual frequenter thereof.

Fifth: Any professional gambler or gambler commonly known as a tin-horn gambler, card player or card sharp.

Sixth: Any person who goes about to beg alms, who is not afflicted or disabled by a physical malady or misfortune.

Seventh: Any habitual drunkard.

Eighth: Any person who abandons or neglects or refuses to support his family.

**History.** C. O. S. 1921, Sec. 1956; S. L. 1919, Ch. 61, Sec. 1. Approved March 29, 1919. Amends R. L. 1910, Sec. 2515; S. L. 1903. Ch. 12, Art. 4, Sec. 1.

Under secs. 2883-4-8, information for vagrancy setting out several paragraphs consecutively numbered describing different classes of vagrants, without using word "and" or word "or" to connect several descriptive paragraphs, was defective. Webb v. State, 241 P. 830; Campbell v. State, 237 P. 133.

Court will affirm conviction where no fundamental error appears on face of record where accused fails to file brief. Hantman v. State, 236 P. 443.

Information hereunder held insufficient. Armstead v. State, 11 Okla. Cr. 649.

Evidence held insufficient to sustain conviction under subd. 1. Lucas v. State, 238 P. 502.

When defendant has lived in community for 20 years, proof should be that he comes squarely within terms of statute defining a vagrant. Jenkins v. State, 18 Okla. Cr. 464, 196 P. 553.

Evidence admitted to prove only those charges specifically set out in information. Boggess v. State, 15 Okla. Cr. 223, 175 P. 946.

## 2582. Punishment of Vagrants.

Any person arrested and convicted of vagrancy within the meaning of this article, shall be punished by a fine of not less than ten dollars, nor more than one hundred dollars, or by imprisonment in the county jail for a period of not exceeding thirty days, or by both such fine and imprisonment.

**History.** C. O. S. 1921, Sec. 1957; R. L. 1910, Sec. 2516 (See Revisers' Note); S. L. 1903, Ch. 12, Art. 4. Sec. 2. Effective February 28, 1903.


# ARTICLE 90.

# WEAPONS—SELLING, WEARING, MANUFACTURING AND DISCHARGING.

Sec.
2583. Carrying Concealed Weapons.
2584. Carrying Weapons.
2585. Selling Weapons to Minors.
2586. Public Officials—When Privileged.
2587. Arms—When Lawful to Carry.
2588. Degree of Punishment.
2589. Public Buildings and Gatherings.

Sec.
2590. Intent of Persons Carrying Weapons.
2591. Pointing Weapons at Another.
2592. Punishment.
2593. Manufacturing Slung-Shot.
2594. Carrying or Using Slung-Shot.
2595. Discharging Firearms in Public Place.

## 2583. Carrying Concealed Weapons.

It shall be unlawful for any person in the State of Oklahoma to carry concealed on or about his person, saddle or saddle bags, any pistol, revolver, bowie-knife, dirk, dagger, slung-shot, sword-cane, spear, metal knuckles or any other kind of knife or instrument manufactured or sold for the purpose of defense except as in this article provided.

**History.** C. O. S. 1921, Sec. 1991; R. L. 1910, Sec. 2545; S. 1903, Sec. 2502; S. 1893, Sec. 2404; S. 1890, Sec. 2432.

This section held not contrary to Art. 2, Sec. 26, Const. Mathews v. State, 244 P. 56.

Constitutional. Beard v. State, 7 Okla. 154, 122 P. 941.

Not repugnant to Sec. 2584. Nor in violation of Art. 2, Sec. 26, of Okla. Bill of Rights. Ex parte Thomas, 1 Okla. Cr. 210, 97 P. 260.

### 2584.  Carrying Weapons.

It shall be unlawful for any person in the State of Oklahoma, to carry upon or about his person any pistol, revolver, bowie-knife, dirk-knife, loaded cane, billy, metal knuckles, or any other offensive or defensive weapon, except as in this article provided.

History.  C. O. S. 1921, Sec. 1992; R. L. 1910, Sec. 2546; S. 1903, Sec. 2503; S. 1893, Sec. 2405; S. 1890, Sec. 2433.

Conviction for carrying revolver within curtilage of defendant's own premises sustained.  Pierce v. State, 275 P. 393.

In prosecution for carrying weapon, it is no defense that revolver was carried as protection from attack and robbery.  Pierce v. State, 275 P. 393.

Defense that revolver which defendant was carrying on his person was carried to protect himself from attack and robbery was no defense.  Pierce v. State, 275 P. 393.

Defendant may be convicted of carrying on or about his person a revolver, and the fact that same is carried upon his person within the curtilage of his own premises is immaterial.  Pierce v. State, 275 P. 393.

Constitutional.  Beard v. State, 7 Okla. Cr. 154, 122 P. 941.

Not repugnant to Sec. 2583. Nor in violation of Art. 2, Sec. 26, of Okla. Bill of Rights.  Ex parte Thomas, 1 Okla. Cr. 210, 97 P. 260.

### 2585.  Selling Weapons to Minors.

It shall be unlawful for any person within this State, to sell or give to any minor any of the arms or weapons designated in the two preceding sections.

History.  C. O. S. 1921, Sec. 1993; R. L. 1910, Sec. 2547; S. 1903, Sec. 2504; S. 1893, Sec. 2406; S. 1890, Sec. 2434.

### 2586.  Public Officials—When Privileged.

Public officers while in the discharge of their duties or while going from their homes to their place of duty, or returning therefrom, shall be permitted to carry arms, but at no other time and under no other circumstances:   Provided, however, that if any public officer be found carrying such arms while under the influence of intoxicating drinks, he shall be deemed guilty of a violation of this article as though he were a private person.

History.  C. O. S. 1921, Sec. 1994; R. L. 1910, Sec. 2548; S. 1903, Sec. 2505; S. 1893, Sec. 2407; S. 1890, Sec. 2435.

Evidence of occurrence prior to shooting held admissible to show defendant carrying pistol while under influence of intoxicating liquor.  Wilmoth v. State, 203 P. 1055.

### 2587.  Arms, When Lawful to Carry.

Persons shall be permitted to carry shot-guns or rifles for the purpose of hunting, having them repaired, or for killing animals, or for the purpose of using the same in public muster or military drills, or while traveling or removing from one place to another, and not otherwise.

History.  C. O. S. 1921, Sec. 1995; R. L. 1910. Sec. 2549; S. 1903, Sec. 2506; S. 1893, Sec. 2408; S. 1890, Sec. 2436.

### 2588.  Degree of Punishment.

Any person violating the provisions of any one of the foregoing sections, [sic] on the first conviction be adjudged guilty of a misdemeanor and be punished by a fine of not less than twenty-five dollars nor more than fifty dollars, or by imprisonment in the county jail not to exceed thirty days or both at the discretion of the court.  On the second and every subsequent conviction, the party offending shall on conviction be fined not less than fifty dollars nor more than two hundred and fifty dollars or be imprisoned in the county jail not less than thirty days nor more than three months or both, at the discretion of the court.

History.  C. O. S. 1921, Sec. 1996; R. L. 1910, Sec. 2550; S. 1903, Sec. 2507; S. 1893, Sec. 2409; S. 1890, Sec. 2437.

### 2589.  Public Buildings and Gatherings.

It shall be unlawful for any person, except a peace officer, to carry into any church or religious assembly, any school room or other place where persons are assembled for public worship, for amusement, or for educational or scientific purposes, or into any circus, show or public exhibition of any kind,

840

or into any ball room, or to any social party or social gathering, or to any election, or to any political convention, or to any other public assembly, any of the weapons designated in the first and second sections of this article.

History. C. O. S. 1921, Sec. 1997; R. L. 1910, Sec. 2551 (See Revisers' Note); S. 1903, Sec. 2508; S. 1893, Sec. 2410; S. 1890, Sec. 2438.

Evidence held sufficient to sustain conviction for carrying pistol into a public gathering. Spears v. State, 281 P. 167.

## 2590. Intent of Persons Carrying Weapons.

It shall be unlawful for any person in this State to carry or wear any deadly weapons or dangerous instrument whatsoever, openly or secretly, with the intent or for the avowed purpose of injuring his fellow man.

History. C. O. S. 1921, Sec. 1998; R. L. 1910, Sec. 2552; S. 1903, Sec. 2509; S. 1893, Sec. 2411; S. 1890, Sec. 2439.

## 2591. Pointing Weapons at Another.

It shall be unlawful for any person to point any pistol or any other deadly weapon whether loaded or not, at any other person or persons either in anger or otherwise.

History. C. O. S. 1921, Sec. 1999; R. L. 1910, Sec. 2553; S. 1903, Sec. 2510; S. 1893, Sec. 2412; S. 1890, Sec. 2440.

Proof must show intentional pointing. Buchanan v. State, 219 P. 420.

Cited. Mann v. State, 217 P. 231.

Cited. Howell v. State, 249 P. 1112.

See Sec. 2886, note. Lawrence v. State.

Cited, in trespass case. Dickinson v. State.

3 Okla. Cr. 151, 104 P. 923.

Applied. Saxon v. State, 19 Okla. Cr. 58, 198 P. 107.

Winchester rifle will be construed to mean deadly weapon without specific words. Billings v. State, 14 Okla. Cr. 12, 166 P. 904.

## 2592. Punishment.

Any person violating the provisions of the three preceding sections shall, on conviction, be punished by a fine of not less than fifty dollars, nor more than five hundred and shall be imprisoned in the county jail for not less than three nor more than twelve months.

History. C. O. S. 1921, Sec. 2000; R. L. 1910, Sec. 2554; S. 1903, Sec. 2511; S. 1893, Sec. 2413; S. 1890, Sec. 2441.

Applied. Billings v. State, 14 Okla. Cr. 12, 166 P. 904.

## 2593. Manufacturing Slung-Shot.

Any person who manufactures or causes to be manufactured, or sells or offers or keeps for sale or disposes of any instrument or weapon of the kind usually known as slung-shot, or of any similar kind, is guilty of a misdemeanor.

History. C. O. S. 1921, Sec. 2001; R. L. 1910, Sec. 2555; S. 1903, Sec. 2357; S. 1893, Sec. 2266; S. 1890, Sec. 2203; Dak. 6656.

## 2594. Carrying or Using Slung-Shot.

Every person who carries upon his person, whether concealed or not, or uses or attempts to use against another, any instrument or weapon of the kind usually known as slung-shot, or of any similar kind, is guilty of a felony.

History. C. O. S. 1921, Sec. 2002; R. L. 1910, Sec. 2556; S. 1903, Sec. 2358; S. 1893, Sec. 2267; S. 1890, Sec. 2204; Dak. 6657.

## 2595. Discharging Firearms in Public Place.

Every person who wilfully discharges any species of firearm, airgun or other weapon, or throws any other missile in any public place, or in any place where there is any person to be endangered thereby, although no injury to any person shall ensue, is guilty of a misdemeanor.

History. C. O. S. 1921, Sec. 2025; R. L. 1910, Sec. 2577; S. 1903, Sec. 2393; S. 1893, Sec. 2302; S. 1890, Sec. 2329; Dak. 6696.

[Note—Originally part of Art. 45, Ch. 23, R. L. 1910, and Sec. 2421, herein, applicable.] Applied. Lady v. State, 18 Okla. Cr. 59, 192 P. 699.

# THE

# CODE OF GEORGIA

## OF

# 1933

ADOPTED MARCH 24, 1933

EFFECTIVE JANUARY 1, 1935

PREPARED UNDER THE DIRECTION
OF THE
CODE COMMISSION

BY

ORVILLE A. PARK  and  HARRY S. STROZIER

———

HARRY B. SKILLMAN          HENRY H. COBB

———

ATLANTA
THE HARRISON COMPANY
1935

Copyright, 1935

BY

THE STATE OF GEORGIA

PRESS OF FOOTE & DAVIES CO., ATLANTA

tions, powers, duties, or privileges incident and belonging to the office of special deputy sheriff, special constable, marshal, or policeman, or other peace officer, or detective, without first having received his appointment in writing from the lawfully constituted authorities of the State. (Acts 1890-1, p. 220.)

**Cross-references.**—Mob violence, see § 26-5401.  Officers of this State must reside therein, etc., see § 89-105.

**26-4902.** (338 P. C.) **Acting as peace officer without authority.**—Any person who shall, without authority, exercise or attempt to exercise the functions of, or hold himself out to anyone as, a deputy sheriff, marshal, policeman, constable, or other peace officer or detective shall be guilty of a misdemeanor: Provided, that nothing in this Chapter shall be construed to interfere with the police powers granted to conductors of passenger trains, nor shall this and the preceding section apply in times of riot or unusual disturbance, or in other instances provided for by law. (Acts 1890-1, p. 220.)

**Cross-reference.**—Police power of conductors, etc., see § 27-214.

---

## CHAPTER 26-50.  OTHER OFFENSES AGAINST PUBLIC JUSTICE.

Sec.
26-5001.  Punishment.

**26-5001.** (339 P. C.) **Punishment.**—Any other offense against public justice, not in this Title provided for, shall be a misdemeanor.

---

# PART X.   CRIMES AGAINST PUBLIC PEACE AND TRANQUILITY.

---

## CHAPTER 26-51.  CARRYING WEAPONS, ETC.

| Sec. | | Sec. | |
|---|---|---|---|
| 26-5101. | Carrying concealed weapons. | 26-5105. | Fee for license. |
| 26-5102. | Carrying of deadly weapons at courts, etc. | 26-5106. | Punishment. |
|  |  | 26-5107. | Pointing weapon at another. |
| 26-5103. | Carrying pistols without license. | 26-5108. | Selling or furnishing weapons to minors. |
| 26-5104. | License, how obtained.  Record of licensees. |  |  |

**26-5101.** (347 P. C.) **Carrying concealed weapons.**—Any person having or carrying about his person, unless in an open manner and fully exposed to view, any kind of metal knucks, pistol, dirk, sword in a cane, spear, bowie knife, or any other kind of knives manufactured and sold for the purpose of offense and defense, shall be guilty of a misdemeanor. (Cobb, 848, 849. Acts 1882-3, p. 48; 1898, p. 60.)

**Cross-reference.**—Right to bear arms, see Const. U. S., Amend. 2 (§ 1-802).

**26-5102.** (348 P. C.) **Carrying of deadly weapons at courts, etc.**—Whoever shall carry about his person any dirk, bowie knife, pistol or revolv-

er, or any kind of deadly weapon, to or while at a court of justice or an election ground or precinct, or any place of public worship, or any other public gathering, except militia muster grounds, shall be punished as for a misdemeanor. This section shall not apply to a sheriff, deputy sheriff, coroner, constable, marshal, policeman, or other arresting officer, or posse, acting in the discharge of their official duties. (Acts 1870, p. 421 ; 1878-9, p. 64 ; 1909, p. 90.)

**26-5103. Carrying pistols without license.**—It shall be unlawful for any person to have or carry about his person or to have in his manual possession outside of his own home or place of business any pistol or revolver without first taking out a license from the ordinary of the county in which the party resides: Provided, that nothing in this law shall be construed to alter, affect, or amend any laws now in force relative to carrying of concealed weapons on or about one's person: and Provided further, that this law shall not apply to sheriffs, deputy sheriffs, marshals, or other arresting officers of this State or the United States, who are now allowed, by law, to carry revolvers ; nor to any of the militia while in service or upon duty ; nor to any students of military colleges or schools when they are in the discharge of their duty at such colleges. (Acts 1910, p. 134.)

**26-5104. License, how obtained. Record of licensees.**—The ordinary of the county in which the applicant resides may grant such license, either in term time or during vacation: Provided, that the applicant shall be at least 18 years old, and shall give a bond payable to the Governor in the sum of $100, conditioned upon the proper and legitimate use of said weapon, with a surety approved by the ordinary of said county, and the ordinary granting the license shall keep a record of the name of the person taking out such license, the name of the maker of the firearm to be carried, and the caliber and number of the same. (Acts 1910, pp. 134, 135.)

**26-5105. Fee for license.**—The person to whom such license is granted shall pay to the ordinary for granting said license the sum of 50 cents, which license shall cover a period of three years from date of granting same. (Acts 1910, pp. 134, 135.)

**26-5106. Punishment.**—Any person violating any of the provisions of the three preceding sections shall be punished as for a misdemeanor. (Acts 1910, pp. 134, 135.)

**26-5107. (349 P. C.) Pointing weapon at another.**—Any person who shall intentionally point or aim a gun or pistol, whether loaded or unloaded, at another, not in a sham battle by the military, and not in self defense or in defense of habitation, property, or person, or other instances standing upon like footing of reason and justice, shall be guilty of a misdemeanor. (Acts 1880-1, p. 151.)

**Cross-reference.**—Misdemeanor punished how, see § 27-2506.

**26-5108. (350 P. C.) Selling or furnishing weapons to minors.**—Any person who shall knowingly sell or furnish any minor with a pistol, dirk, bowie knife, or sword cane, shall be guilty of a misdemeanor. Nothing herein contained shall be construed as forbidding the furnishing of such weapons under circumstances justifying their use in defending life, limb, or property. (Acts 1876, p. 112.)

---

## CHAPTER 26-52. DUELING.

Sec.
26-5201. Challenging to fight duel.
26-5202. Seconds; punishment.
26-5203. Fighting duel.

Sec.
26-5204. Officers knowing of and not preventing duels.
26-5205. Proclaiming as a "coward" for not fighting duel.

**26-5201. (354 P. C.) Challenging to fight duel.**—Any person who shall deliberately challenge, by word or writing, another person to fight with sword, pistol, or other deadly weapon, or any person so challenged who shall accept the challenge, shall be punished by imprisonment and labor in the penitentiary for not less than one year nor more than two years. (Cobb, 811.)

**26-5202. (355 P. C.) Seconds; punishment.**—Any person who shall knowingly and wilfully carry and deliver any written or printed challenge, or verbally deliver any message or challenge to another, to fight with sword, pistol, or other deadly weapon, or shall consent to be a second in any such duel or combat, shall be punished as prescribed in the preceding section. (Cobb, 811.)

**26-5203. (356 P. C.) Fighting duel.**—Any person who shall be engaged in the act of fighting a duel, with sword, pistol, or other deadly weapon, either as principal or second, shall be punished by imprisonment and labor in the penitentiary for not less than four years nor more than eight years: Provided, that if death should ensue from such duel, all the parties, both principals and seconds, shall be guilty of murder and suffer the punishment of death; but the punishment may be commuted in conformity with the provisions of section 26-1005. (Cobb, 811.)

**26-5204. (357 P. C.) Officers knowing of and not preventing duels.**—Any justice of the peace, or other public officer bound to preserve the public peace, who shall have knowledge of an intention in any person or persons to fight with any deadly weapon, and shall not use and exert his official authority to arrest the parties and prevent the duel, by binding them over to keep the peace toward each other, shall, on conviction, be dismissed from office. (Cobb, 811.)

**26-5205. (358 P. C.) Proclaiming as a "coward" for not fighting duel.**—Any person who shall, in any newspaper or handbill, written or printed, publish or proclaim any other person as a coward or use any other opprobrious and abusive language for not accepting a challenge or fighting a duel, shall be guilty of a misdemeanor. (Cobb, 812.)

**Cross-reference.**—Libel, see § 26-2101.

# REVISED STATUTES

of the

## STATE OF MISSOURI

## 1959

Comprising all statute laws of a general and
permanent nature, the Constitution of the
United States, the Constitution of Missouri,
and the Rules of the Missouri Supreme Court.

___

## VOLUME 3

___

Compiled, arranged, classified and indexed

under direction of

## COMMITTEE ON LEGISLATIVE RESEARCH

REPRESENTATIVE HARRY W. SMITH, *Chairman*

SENATOR JOHN W. NOBLE, *Vice-Chairman*

| *Senators* | *Representatives* |
|---|---|
| HARTWELL G. CRAIN | PAUL D. CANADAY |
| JACK S. CURTIS | LUTHER ARNOLD |
| E. GARY DAVIDSON | MARTIN P. DEGENHARDT |
| FLOYD R. GIBSON | THOMAS D. GRAHAM |
| C. R. HAWKINS | HORTON F. HOLLAND |
| EDGAR J. KEATING | T. A. PENMAN |
| MICHAEL KINNEY | THOMAS A. WALSH |
| J. F. PATTERSON | GEORGE D. YOUNG |
| GEORGE A. SPENCER | ROBERT ELLIS YOUNG |

___

Published by authority of Chapter 3, RSMo

61

nor more than ten years. The terms "bomb" and "bombshell" as used in this section shall be held to mean any device or object containing dynamite or any other explosive or highly combustible substance or chemical connected with a fuse, dynamite cap or other device or substance whereby such explosive or highly combustible substance or chemical may be ignited or exploded, and capable of causing bodily injury or death to persons, or damage or destruction to property; provided, that this section shall not apply to the lawful possession of bombs or bombshells by peace officers or by members of military forces in the regular discharge of their duties as such.

(RSMo 1939 §4818)

Destructive or simulated destructive substance, placing or reporting, RSMo 562.285

**564.590.   Machine gun, possession a felony — exceptions. —** It shall be unlawful for any person to sell, deliver, transport, or have in actual possession or control any machine gun, or assist in, or cause the same to be done. Any person who violates this section shall be guilty of a felony and punished by imprisonment in the state penitentiary not less than two nor more than thirty years, or by a fine not to exceed five thousand dollars, or by both such fine and imprisonment; provided, that nothing in this section shall prohibit the sale, delivery, or transportation to police departments or members thereof, sheriffs, city marshals or the military or naval forces of this state or of the United States, or the possession and transportation of such machine guns, for official use by the above named officers and military and naval forces in the discharge of their duties.

(RSMo 1939 §4819)
Prior revision: 1929 §4426

**564.600.   "Machine gun" defined. —** The term "machine gun" as used in section 564.590 shall be construed to apply to and include all firearms known as machine rifles, machine guns or submachine guns capable of discharging automatically and continuously loaded ammunition of any caliber in which the ammunition is fed to such gun from or

by means of clips, disks, drums, belts or other separable mechanical device.

(RSMo 1939 §4820)
Prior revision: 1929 §4427

**564.610.   Dangerous and deadly weapons—concealed—other offenses—sale to minors.—**If any person shall carry concealed upon or about his person a dangerous or deadly weapon of any kind or description, or shall go into any church or place where people have assembled for religious worship, or into any schoolroom or place where people are assembled for educational, political, literary or social purposes, or to any election precinct on any election day, or into any courtroom during the sitting of court, or into any other public assemblage of persons met for any lawful purpose other than for militia drill, or meetings called under militia law of this state, having upon or about his person, concealed or exposed, any kind of firearms, bowie knife, springback knife, razor, metal knucks, billy, sword cane, dirk, dagger, slung shot or other similar deadly weapons or shall, in the presence of one or more persons, exhibit any such weapons in a rude, angry or threatening manner, or shall have any such weapon in his possession when intoxicated, or, directly or indirectly, sell or deliver, loan or barter to any minor any such weapon, without the consent of the parent or guardian of such minor, he shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding two years, or by fine of not less than one hundred nor more than one thousand dollars, or by imprisonment in the county jail not less than fifty days nor more than one year, or by both such fine and imprisonment; provided, that nothing contained in this section shall apply to legally qualified sheriffs, police officers and other persons whose *bona fide* duty is to execute process, civil or criminal, make arrests, or aid in conserving the public peace, nor to persons traveling in a continuous journey peaceably through this state.

(RSMo 1939 §4423)
Prior revisions: 1929 §4029; 1919 §3275; 1909 §4496

(1952) In prosecution for exhibiting weapon in rude, etc. manner, question as to whether defendant acted under her husband's coercion, held for jury. State v. Ready (Mo.), 251 S. W. (2d) 680.

(1953) When a deputy sheriff is in a county other than the one for which he is commissioned on his own business the proviso contained in this section

does not apply and his conviction under this section is proper. State v. Owen (Mo.), 258 S. W. (2d) 662.

For prior cases, see Vol. III RSMo 1949

**564.620. Pistol, revolver or firearms to be plainly marked.** — No wholesaler or dealer therein shall have in his possession for the purpose of sale, or shall sell, any pistol, revolver, or other firearm of a size which may be concealed upon the person, which does not have plainly and permanently stamped upon the metallic portion thereof, the trademark or name of the maker, the model and the serial factory number thereof, which number shall not be the same as that of any other such weapon of the same model made by the same maker, and the maker, and no wholesale or retail dealer therein shall have in his possession for the purpose of sale, or shall sell, any such weapon unless he keep a full and complete record of such description of such weapon, the name and address of the person from whom purchased and to whom sold, the date of such purchase or sale, and in the case of retailers the date of the permit and the name of the circuit clerk granting the same, which record shall be open to inspection at all times by any police officer or other peace officer of this state.

(RSMo 1939 §4825)
Prior revision: 1929 §4432

**564.630. Concealed weapon permits— how obtained.** — 1. No person, other than a manufacturer or wholesaler thereof to or from a wholesale or retail dealer therein, for the purposes of commerce, shall directly or indirectly buy, sell, borrow, loan, give away, trade, barter, deliver or receive, in this state, any pistol, revolver or other firearm of a size which may be concealed upon the person, unless the buyer, borrower or person receiving such weapon shall first obtain and deliver to, and the same be demanded and received by, the seller, loaner, or person delivering such weapon, within thirty days after the issuance thereof, a permit authorizing such person to acquire such weapon.

2. Such permit shall be issued by the circuit clerk of the county in which the applicant for a permit resides in this state, if the sheriff be satisfied that the person applying for the same is of good moral character and of lawful age, and that the granting of the same will not endanger the public safety. The permit shall recite the date of the issuance thereof and that the same is invalid after thirty days after the said date, the name and address of the person to whom granted and of the person from whom such weapon is to be acquired, the nature of the transaction, and a full description of such weapon, and shall be countersigned by the person to whom granted in the presence of the circuit clerk. The circuit clerk shall receive therefor a fee of fifty cents.

3. If the permit be used, the person receiving the same shall return it to the circuit clerk within thirty days after its expiration, with a notation thereon showing the date and manner of the disposition of such weapon. The circuit clerk shall keep a record of all applications for such permits and his action thereon, and shall preserve all returned permits.

4. No person shall in any manner transfer, alter or change any such permit or make a false notation thereon or obtain the same upon any false representation to the circuit clerk granting the same, or use or attempt to use a permit granted to another.

(RSMo 1939 §4826)
Prior revision: 1929 §4433

**564.640. Weapons must be stamped.** — No person within this state shall lease, buy or in anywise procure the possession from any person, firm or corporation within or without the state, of any pistol, revolver or other firearm of a size which may be concealed upon the person, that is not stamped as required by section 564.620; and no person shall buy or otherwise acquire the possession of any such article unless he shall have first procured a written permit so to do from the circuit clerk of the county in which such person resides, in the manner as provided in section 564.630.

(RSMo 1939 §4827)
Prior revision: 1929 §4434

**564.650. Manufacture not prohibited.** —Nothing contained in sections 564.620 to 564.660 shall be considered or con-

strued as forbidding or making it unlawful for a dealer in or manufacturer of pistols, revolvers or other firearms of a size which may be concealed upon the person, located in this state, to ship into other states or foreign countries, any such articles whether stamped or not so stamped.

(RSMo 1939 §4828)
Prior revision: 1929 §4435

**564.660. Violation of sections 564.620 to 564.650, penalty.** — Any person or persons, firm, partnership, association or corporation, his or its directors, officers, agents or servants, convicted of violating any of the provisions of sections 564.620 to 564.650, shall be punished by imprisonment in the penitentiary for not more than five years, or by imprisonment in the county jail not less than six months, or by a fine not less than fifty dollars nor more than five thousand dollars, or by both such fine and imprisonment in the county jail.

(RSMo 1939 §4829, A. 1949 H. B. 2154)
Prior revision: 1929 §4436

**564.665. Abandonment of airtight icebox with lock on door, a misdemeanor.**—No person shall abandon, discard, or knowingly permit to remain on premises under his control, in a place accessible to children, any abandoned or discarded icebox, refrigerator, or other airtight or semi-airtight container which has a capacity of one and one-half cubic feet or more and an opening of fifty square inches or more and which has a door or lid equipped with hinge, latch or other fastening device capable of securing such door or lid, without rendering such equipment harmless to human life by removing such hinges, latches or other hardware which may cause a person to be confined therein. This section shall not apply to an icebox, refrigerator or other airtight or semi-airtight container located in that part of a building occupied by a dealer, warehouseman or repairman. Any person violating this section is guilty of a misdemeanor.

(L. 1957 p. 377 §1)

**564.670. Employment of children in occupations hazardous to safety or morals prohibited.** — No child under the age of

sixteen years shall be employed, permitted or suffered to work at or be engaged in any capacity in the operation of any power machinery or assisting therein in any capacity whatever, except in the operation of machinery used for agricultural purposes or in domestic service; nor shall any such child be employed, permitted or suffered to work at or be engaged in or about or in connection with any mine or underground work; nor shall any such child be permitted or suffered to work, or be engaged in any capacity in, about or in connection with the preparing of any composition in which dangerous or poisonous acids or alkalis are used; the manufacture of paints, colors or white leads; dipping, drying or packing matches; manufacturing, packaging or storing powder, dynamite, nitroglycerine compounds, fuses or other explosives; the sewing, lasting or adjustment of any belt to any power machinery, nor in oiling, wiping or cleaning any machinery; nor in operating or assisting in operating any machine used in picking wool, cotton, hair or upholstering material; nor any job press operated by power or cylinder press; nor any machine used in polishing or grinding any metal, nor any machine used for manufacture of goods for immoral purposes; nor in, about, or in connection with any brewery or other establishment where malt or other alcoholic liquors are manufactured, or sold, packed, wrapped, or bottled; hotel, pool or billiard hall; wholesale drugstore; saloon, nor in bowling alleys.

(RSMo 1939 §4665)
Prior revisions: 1929 §4277; 1919 §3527
Employment of children, generally, RSMo 294.011 to 294.110
**For case notes, see Vol. III RSMo 1949**

**564.680. No girls in messenger service.**—No girl under the age of eighteen years shall be employed, permitted or suffered to be engaged in carrying telegraphic dispatches or in the messenger service.

(RSMo 1939 §4666)
Prior revisions: 1929 §4278; 1919 §3528

**564.690. Officers designated to enforce law.**—The director of the division of industrial inspection of the depart-

# ACTS

## AND JOINT RESOLUTIONS

### OF THE

# GENERAL ASSEMBLY

OF THE

## Commonwealth of Virginia

———————

EXTRA SESSION 1959

REGULAR SESSION 1960

———————

Department of Purchases
and Supply
Richmond
1960

§ 32-195.16.   Advertising Matter—In the operation of a plan it shall be unlawful to use any misleading advertising matter *or subscription applications or contracts, whether* written or oral.

2.   That §§ 32-195.6 and 32-195.7 of the Code of Virginia are repealed.

3.   An emergency exists and this act is in force from its passage.

---

## CHAPTER 358

*An Act to revise, rearrange, amend and recodify the general laws of Virginia relating to crimes and offenses generally; to that end to repeal Title 18 of the Code of Virginia, which title includes Chapters 1 to 11 and §§ 18-1 to 18-366, inclusive, of the Code of Virginia, as amended, which title relates to crimes and offenses generally; to amend the Code of Virginia by adding thereto in lieu of the foregoing title, chapters and sections of the Code repealed by this act a new title numbered 18.1, which title includes eight new chapters numbered 1 to 8, both inclusive, and new sections numbered §§ 18.1-1 to 18.1-429, both inclusive, relating to crimes and offenses generally; to prescribe when such revision and recodification shall become effective; and to repeal all acts and parts of acts in conflict with the provisions of this act.*

[S 1]

Approved March 30, 1960

Be it enacted by the General Assembly of Virginia:

1.   That Title 18 of the Code of Virginia, which title includes Chapters 1 to 11 and §§ 18-1 to 18-366, inclusive, of the Code of Virginia, as amended, is repealed.

2.   That the Code of Virginia be amended by adding thereto, in lieu of the title, chapters and sections of the Code of Virginia herein repealed, a new title numbered 18.1, eight new chapters numbered 1 to 8, both inclusive, and new sections numbered 18.1-1 to 18.1-429, both inclusive, which new title, chapters and sections are as follows:

## CHAPTER 1
### GENERAL PROVISIONS

---

### ARTICLE 1
### TRANSITION PROVISIONS

---

§ 18.1-1.   All acts and parts of acts, all sections of this Code, and all provisions of municipal charters, inconsistent with the provisions of this title, are, except as herein otherwise provided, repealed to the extent of such inconsistency.

§ 18.1-2.   The repeal of Title 18 effective as of July 1, 1960, shall not affect any act or offense done or committed, or any penalty or forfeiture incurred, or any right established, accrued or accruing on or before such date, or any prosecution, suit or action pending on that day. Except as herein otherwise provided, neither the repeal of Title 18 nor the enactment of this title shall apply to offenses committed prior to July 1, 1960, and prosecutions for such offenses shall be governed by the prior law, which is continued in effect for that purpose. For the purposes of this section, an offense was committed prior to July 1, 1960, if any of the essential elements of the offense occurred prior thereto.

Case 1:22-cv-00771-JLS   Document 47   Filed 10/29/22   Page 46 of 76

to be destroyed, any animal in his charge or found abandoned or not properly cared for, when, in the judgment of such agent or officer and two reputable citizens called to view the same in his presence, one of whom may be selected by the owner of such animal, if he should so request, and who shall give their written certificate thereto, such animal appears to be injured, disabled, diseased, past recovery, or unfit for any useful purpose, and should the two citizens called in as above disagree they shall select a third, and his decision shall be final.

§ 18.1-222.  When any person arrested under any provision of law concerning cruelty to animals is at the time of such arrest in charge of any vehicle drawn by or containing any animal cruelly treated, any such agent or officer of such society may take charge of such animal and of such vehicle and its contents and shall give notice thereof to the owner if known, and shall care and provide for them until their owner shall take charge of them, which he shall do within thirty days from the date of such notice. The society shall have a lien on such animals and vehicles for the expenses of such care and provision, and such lien may be enforced as provided in § 18.1-224.

§ 18.1-223.  Any such officer or agent may lawfully take charge of any animal found abandoned, neglected, or cruelly treated or unfit for use, and shall thereupon give notice thereof to the owner, if known, and may provide for such animal until the owner takes charge of the same, and the expenses of such care and provision shall be a charge against the owner of such animal, collectible from the owner at the suit of the society whose officer or agent may have taken charge of such animal.

§ 18.1-224.  When any such society, acting through its agents or officers, shall provide a neglected or abandoned animal, or any other animal, taken charge of by the society, as hereinbefore provided, with proper food, shelter, and care, it may detain such animal until the expense of such food, shelter, and care is paid, and shall have a lien upon such animal therefor, and if such expense be not paid within thirty days after such food, shelter, and care begins to be furnished, as aforesaid, such animal may be sold at public auction upon giving written notice of the time and place of sale at least six days previous thereto to the owner if he be known, and if he be not known by giving notice of the time and place of such sale for at least six days previous thereto in some newspaper published in the county or city where such animal was found; and after discharging the lien on such animal or vehicle mentioned in § 18.1-222 the proceeds remaining shall be paid over to the owner of such animal, and if the owner of such animal cannot be found the proceeds remaining shall be paid into the Literary Fund of the State Treasury.

§ 18.1-225.  The word "animal", as used in this article, shall be construed to include birds and fowls.

§ 18.1-226.  The provisions of this article may be enforced by any judge of a court not of record in cities, towns, or counties wherein the offense is committed, or the offender or owner may be found, and every such offender shall have the right of appeal to the corporation court in cities and the circuit court in counties.

## ARTICLE 4

### MISCELLANEOUS OFFENSES

§ 18.1-237.  If any person arrived at the age of discretion profanely curse or swear or get or be drunk in public he shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than one nor more than ten dollars.

If any person shall be convicted for being drunk in public three times within one year in this State, upon the third or any subsequent conviction

for such offense within the period of one year, such person may be punished by imprisonment in jail for not more than six months or by a fine of not more than twenty-five dollars, or by both such fine and imprisonment.

Counties, cities and towns may pass or adopt ordinances or resolutions prohibiting and punishing the conduct and acts embraced in this section.

§ 18.1-238. If any person shall curse or abuse anyone, or use vulgar, profane or indecent language over any telephone in this State, he shall be guilty of a misdemeanor. It shall be the duty of each telephone company in this State to furnish immediately in response to a subpoena issued by a court of record such information as it, its officers and employees, may possess which, in the opinion of the court, may aid in the apprehension of persons suspected of violating the provisions of this section. Any telephone company or any officer or employee thereof who shall fail or refuse to furnish such information when so requested, may be fined not more than one hundred dollars.

§ 18.1-239. If any person wilfully interrupt or disturb any assembly met for the worship of God or, being intoxicated, disturb the same, whether wilfully or not, he shall be guilty of a misdemeanor, and any justice of the peace or other conservator of the peace may put him under restraint during religious worship, and require him to enter into a recognizance for his good behavior for a period not exceeding twelve months.

§ 18.1-240. If any person wilfully interrupt, molest, or disturb the exercise of any free school or any other school or of any literary society or, being intoxicated, disturb the same, whether wilfully or not, he shall be guilty of a misdemeanor.

§ 18.1-241. If any person carry any gun, pistol, bowie knife, dagger or other dangerous weapon to a place of worship while a meeting for religious purposes is being held at such place, or, without good and sufficient cause therefor, carry any such weapon on a Sunday at any place other than his own premises, he shall be fined not less than twenty dollars. If any offense under this section be committed at a place of religious worship, the offender may be arrested on the order of a conservator of the peace, without warrant, and held until a warrant can be obtained, but not exceeding three hours. Every justice of the peace, upon his own knowledge or upon the affidavit of any person that an offense under this section has been committed shall issue a warrant for the arrest of the offender.

§ 18.1-242. If any person engage in the fighting of cocks, dogs or other animals, for money, prize or anything of value, or upon the result of which any money or other thing of value is bet or wagered, or to which an admission fee is charged, directly or indirectly, or for any championship, he shall be fined not less than one hundred dollars nor more than five hundred dollars for each offense.

§ 18.1-243. If a person unlawfully disinter or displace a dead human body, or any part of a dead human body, which has been deposited in any vault, grave or other burial place, he shall be confined in the penitentiary not less than one nor more than ten years.

§ 18.1-244. If any person:

(1) Wilfully and maliciously destroy, mutilate, deface, injure, or remove any tomb, monument, gravestone, or other structure placed within any cemetery, graveyard, or place of burial, or within any lot belonging to any memorial or monumental association, or any fence, railing, or other work for the protection or ornament of any tomb, monument, gravestone, or other structure aforesaid, or of any cemetery lot within any cemetery;

(2) Wilfully or maliciously destroy, remove, cut, break, or injure any tree, shrub, or plant within any cemetery or lot of any memorial or monumental association;

(3) Wilfully or maliciously destroy, mutilate, injure, or remove and

carry away any flowers, wreaths, vases, or other ornaments placed upon or around any grave, tomb, monument, or lot in any cemetery, graveyard, or other place of burial; or

(4) Wilfully obstruct proper ingress and egress to and from any cemetery or lot belonging to any memorial association,

He shall be fined not exceeding one hundred dollars, or confined in jail not exceeding six months.

This section shall not apply to any work which is done by the authorities of a church or congregation in the maintenance or improvement of any burial ground or cemetery belonging to it and under its management or control and which does not injure or result in the removal of a tomb, monument, gravestone, grave marker or vault.

§ 18.1-245. No person, firm, or corporation shall maintain, operate, promote, conduct or advertise, or aid in maintaining, operating, promoting, conducting or advertising, or participate in any "marathon", "marathon dance", "walkathon", "skathon", "bikathon", or any other mental or physical endurance contest or performance of a like or similar character or nature under any name whatsoever; provided, that this section shall not apply to bona fide athletic contests commonly known as cross-country races or marathon races held on extended cross-country courses over a limited number of miles.

Any person, firm or corporation violating the provisions of this section, shall be guilty of a misdemeanor. Each day of such violation shall constitute a separate offense.

§ 18.1-246. Whoever keeps or uses a live pigeon or other bird or fowl for the purpose of a target, or to be shot at either for amusement or as a test of skill in markmanship, or shoots at a bird kept or used as aforesaid, or is a party to such shooting, or lets any building, room, field, or premises, or knowingly permits the use thereof for the purpose of such shooting, shall be punished by a fine of not more than fifty dollars or by imprisonment for not more than thirty days, or by both. Nothing herein contained shall apply to the shooting of wild game.

## CHAPTER 5
### OFFENSES AGAINST THE PEACE
### ARTICLE 1
### RIOTS, ETC.: DISORDERLY CONDUCT

§ 18.1-247. All judges and justices of the peace may suppress riots, routs, and unlawful assemblies within their jurisdiction. And it shall be the duty of each of them to go among, or as near as may be with safety to, persons riotously, tumultuously, or unlawfully assembled, and in the name of the law command them to disperse; and if they shall not thereupon immediately and peacefully disperse, such judge or justice of the peace giving the command, and any other present, shall command the assistance of all persons present, and of the sheriff or sergeant of the county or corporation, with his posse, if need be, in arresting and securing those so assembled. If any person present, on being required to give his assistance depart or fail to obey, he shall be deemed a rioter.

§ 18.1-248. If a person be arrested for a riot, rout, or unlawful assembly, the judge or justice of the peace ordering the arrest, or any other justice, shall commit him to jail, unless he shall enter into recognizance, with sufficient surety, to appear before the court having jurisdiction of the offense, at its next term, to answer therefor, and in the meantime to be of good behavior and keep the peace.

§ 18.1-249. If any judge or justice of the peace have notice of a riotous, tumultuous, or unlawful assembly, in the county or corporation in

ACTS AND RESOLUTIONS

OF THE

# GENERAL
# ASSEMBLY

OF THE

## STATE OF GEORGIA

## 2003



COMPILED AND PUBLISHED BY AUTHORITY OF THE STATE

# Volume One

## SECTION 4.

All laws and parts of laws in conflict with this Act are repealed.

Approved May 31, 2003.

CRIMES – UNAUTHORIZED
FIREARMS OR WEAPONS;
TRANSPORTATION FACILITES OR VEHICLES.

No. 179 (House Bill No. 397).

AN ACT

To amend Part 3 of Article 4 of Chapter 11 of Title 16 of the Official Code of Georgia Annotated, relating to carrying and possession of firearms, so as to provide an affirmative defense for the unauthorized possession of firearms or other deadly weapons at public gatherings; to amend Part 2 of Article 4 of Chapter 12 of Title 16 of the Official Code of Georgia Annotated, relating to transportation passenger safety, so as to provide for exceptions to certain prohibitions; to provide an affirmative defense for the unauthorized possession of firearms, hazardous substances, knives, or other devices in a transportation facility or aboard an aircraft, bus, or rail vehicle; to provide for related matters; to provide for an effective date; to repeal conflicting laws; and for other purposes.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF GEORGIA:

## SECTION 1.

Part 3 of Article 4 of Chapter 11 of Title 16 of the Official Code of Georgia Annotated, relating to carrying and possession of firearms, is amended by striking Code Section 16-11-127, relating to carrying deadly weapons at public gatherings, in its entirety and inserting in lieu thereof the following:

"16-11-127.

(a) Except as provided in Code Section 16-11-127.1, a person is guilty of a misdemeanor when he or she carries to or while at a public gathering any explosive compound, firearm, or knife designed for the purpose of offense and defense.

(b) For the purpose of this Code section, 'public gathering' shall include, but shall not be limited to, athletic or sporting events, churches or church functions, political rallies or functions, publicly owned or operated buildings, or establishments at which alcoholic beverages are sold for consumption on the premises. Nothing in this Code section shall otherwise prohibit the carrying of a firearm in any other public place by a person licensed or permitted to carry such firearm by this part.

A31

(c) This Code section shall not apply to competitors participating in organized sport shooting events. Law enforcement officers, peace officers retired from state or federal law enforcement agencies, judges, magistrates, solicitors-general, and district attorneys may carry pistols in publicly owned or operated buildings.

(d) It is an affirmative defense to a violation of this Code section if a person notifies a law enforcement officer or other person employed to provide security for a public gathering of the presence of such item as soon as possible after learning of its presence and surrenders or secures such item as directed by the law enforcement officer or other person employed to provide security for a public gathering."

## SECTION 2.

Part 2 of Article 4 of Chapter 12 of Title 16 of the Official Code of Georgia Annotated, relating to transportation passenger safety, is amended by striking Code Section 16-12-125, relating to avoiding or interfering with securing measures, in its entirety and inserting in lieu thereof the following:

'16-12-125.

(a)  Except as otherwise provided in this Code section, it shall be unlawful for any person to avoid or interfere with a properly functioning security measure. Any person convicted of a violation of this Code section shall be guilty of a misdemeanor of a high and aggravated nature; provided, however, that any person who violates this Code section with the intent to commit a felony within the terminal or with regard to any aircraft, bus, or rail vehicle shall be punished by imprisonment for not less than five nor more than 25 years, a fine not to exceed $100,000.00, or both.

(b)  Any violation of this Code section shall be considered a separate offense.

(c)  This Code section shall not apply to authorized agents of the entity owning or operating such security measure.'

## SECTION 3.

Said part is further amended by striking Code Section 16-12-126, relating to intentionally interfering with safety or traffic control devices, in its entirety and inserting in lieu thereof the following:

'16-12-126.

(a)  Except as otherwise provided in this Code section, it shall be unlawful intentionally to disable or inhibit the operation or effectiveness of any properly functioning safety device of any description or to render any item or substance less safe when said item or substance is in any freight of a transportation company, in baggage or possessions of a passenger, or in a terminal.

(b)  Except as otherwise provided in this Code section, it shall be unlawful to intentionally render inoperable or partially inoperable for any period of time any properly functioning device designed or operated for traffic control that is owned, operated, or maintained by or for the benefit of a transportation company.

(c)  Any violation of this Code section shall be punished by imprisonment for not less than five nor more than 20 years, a fine not to exceed $100,000.00, or both.

(d)  Any violation of this Code section shall be considered a separate offense.

(e) This Code section shall not apply to authorized agents of the entity owning or operating such safety device or device designed or operated for traffic control."

## SECTION 4.

Said part is further amended by striking Code Section 16-12-127, relating to prohibition on firearms, hazardous substances, knives, or other devices, in its entirety and inserting in lieu thereof the following:

"16-12-127.

(a)  It shall be unlawful for any person, with the intention of avoiding or interfering with a security measure or of introducing into a terminal any explosive, destructive device, or hoax device as defined in Code Section 16-7-80; firearm; hazardous substance as defined by Code Section 12-8-92; or knife or other device designed or modified for the purpose of offense and defense, to:

    (1)  Have any such item on or about his or her person, or

    (2)  Place or cause to be placed or attempt to place or cause to be placed any such item:

        (A)  In a container or freight of a transportation company;

        (B)  In the baggage or possessions of any person or any transportation company without the knowledge of the passenger or transportation company; or

        (C)  Aboard such aircraft, bus, or rail vehicle.

(b)  A person violating the provisions of this Code section shall be guilty of a felony and shall, upon conviction, be sentenced to imprisonment for not less than one year nor more than 20 years, a fine not to exceed $15,000.00, or both.  A prosecution under this Code section shall not be barred by the imposition of a civil penalty imposed by any governmental entity.

(c)  It is an affirmative defense to a violation of this Code section if a person notifies a law enforcement officer or other person employed to provide security for a transportation company of the presence of such item as soon as possible after learning of its presence and surrenders or secures such item as directed by the law enforcement officer or other person employed to provide security for a transportation company."

## SECTION 5.

This Act shall become effective on the first day of the month following the month in which it is approved by the Governor or in which it becomes law without such approval.

## SECTION 6.

All laws and parts of laws in conflict with this Act are repealed.

Approved May 31, 2003.

# SESSION
# LAWS OF MISSOURI

Passed during the

# NINETY-SECOND GENERAL ASSEMBLY

Second Extraordinary Session, which convened at the City of Jefferson,
Monday, September 8, 2003, and adjourned September 12, 2003.

Second Regular Session, which convened at the City of Jefferson,
Wednesday, January 7, 2004, and adjourned May 30, 2004.



Published by the

## MISSOURI JOINT
## COMMITTEE ON
## LEGISLATIVE RESEARCH

In compliance with Sections 2.030 and 2.040,
Revised Statutes of Missouri, 2000
and
Senate Concurrent Resolution No. 30
Second Regular Session
Ninety-second General Assembly

Veto Overrides 9

HB 349 [SS HS HCS HB 349, 120, 136 & 328]

**EXPLANATION — Matter enclosed in bold-faced brackets [thus] in this bill is not enacted and is intended to be omitted in the law.**

## Authorizes permits to carry concealed weapons.

AN ACT to repeal section 571.030, RSMo, and to enact in lieu thereof three new sections relating to concealable weapons, with penalty provisions.

SECTION
A.  Enacting clause.
50.535.  County sheriff's revolving fund established — fees deposited into, use of moneys — no prior approval for expenditures required.
571.030.  Unlawful use of weapons — exceptions — penalties.
571.094.  Concealed carry endorsements.

*Be it enacted by the General Assembly of the state of Missouri, as follows:*

SECTION A. ENACTING CLAUSE.— Section 571.030, RSMo, is repealed and three new sections enacted in lieu thereof, to be known as sections 50.535, 571.030, and 571.094, to read as follows:

**50.535. COUNTY SHERIFF'S REVOLVING FUND ESTABLISHED — FEES DEPOSITED INTO, USE OF MONEYS — NO PRIOR APPROVAL FOR EXPENDITURES REQUIRED. — 1. Notwithstanding the provisions of sections 50.525 to 50.745 the fee collected pursuant to subsections 10 and 11 of section 571.094, RSMo, shall be deposited by the county treasurer into a separate interest-bearing fund to be known as the county sheriff's revolving fund to be expended at the direction of the county or city sheriff or his or her designee as provided in this section.**

**2. No prior approval of the expenditures from this fund shall be required by the governing body of the county or city not within a county, nor shall any prior audit or encumbrance of the fund be required before any expenditure is made by the sheriff from this fund. This fund shall only be used by law enforcement agencies for the purchase of equipment and to provide training. If the moneys collected and deposited into this fund are not totally expended annually, then the unexpended balance shall remain in said fund and the balance shall be kept in said fund to accumulate from year to year. This fund may be audited by the state auditor's office or the appropriate auditing agency.**

**3. If pursuant to subsection 12 of section 571.094, RSMo, the sheriff of a county of the first classification designates one or more chiefs of police of any town, city, or municipality within such county to accept and process applications for certificates of qualification to obtain a concealed carry endorsement then that sheriff shall reimburse such chiefs of police, out of the moneys deposited into this fund, for any reasonable expenses related to accepting and processing such applications.**

**571.030. UNLAWFUL USE OF WEAPONS — EXCEPTIONS — PENALTIES.— 1. A person commits the crime of unlawful use of weapons if he or she knowingly:**
(1) Carries concealed upon or about his or her person a knife, a firearm, a blackjack or any other weapon readily capable of lethal use; or
(2) Sets a spring gun; or
(3) Discharges or shoots a firearm into a dwelling house, a railroad train, boat, aircraft, or motor vehicle as defined in section 302.010, RSMo, or any building or structure used for the assembling of people; or

A35

(4) Exhibits, in the presence of one or more persons, any weapon readily capable of lethal use in an angry or threatening manner; or

(5) Possesses or discharges a firearm or projectile weapon while intoxicated; or

(6) Discharges a firearm within one hundred yards of any occupied schoolhouse, courthouse, or church building; or

(7) Discharges or shoots a firearm at a mark, at any object, or at random, on, along or across a public highway or discharges or shoots a firearm into any outbuilding; or

(8) Carries a firearm or any other weapon readily capable of lethal use into any church or place where people have assembled for worship, or into any election precinct on any election day, or into any building owned or occupied by any agency of the federal government, state government, or political subdivision thereof[, or into any public assemblage of persons met for any lawful purpose]; or

(9) Discharges or shoots a firearm at or from a motor vehicle, as defined in section 301.010, RSMo, [while within any city, town, or village, and] discharges or shoots a firearm at any person, or at any other motor vehicle, or at any building or habitable structure, unless the person was lawfully acting in self-defense; or

(10) Carries a firearm, whether loaded or unloaded, or any other weapon readily capable of lethal use into any school, onto any school bus, or onto the premises of any function or activity sponsored or sanctioned by school officials or the district school board.

2. Subdivisions (1), (3), (4), (6), (7), (8), (9) and (10) of subsection 1 of this section shall not apply to or affect any of the following:

(1) All state, county and municipal [law enforcement] **peace** officers possessing the duty and power of arrest for violation of the general criminal laws of the state or for violation of ordinances of counties or municipalities of the state, **whether such officers are within or outside their jurisdictions or on or off duty,** or any person summoned by such officers to assist in making arrests or preserving the peace while actually engaged in assisting such officer;

(2) Wardens, superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of crime;

(3) Members of the armed forces or national guard while performing their official duty;

(4) Those persons vested by article V, section 1 of the Constitution of Missouri with the judicial power of the state and those persons vested by article III of the Constitution of the United States with the judicial power of the United States, the members of the federal judiciary;

(5) Any person whose bona fide duty is to execute process, civil or criminal;

(6) Any federal probation officer;

(7) Any state probation or parole officer, including supervisors and members of the board of probation and parole; [and]

(8) Any corporate security advisor meeting the definition and fulfilling the requirements of the regulations established by the board of police commissioners under section 84.340, RSMo; **and**

**(9) Any coroner, deputy coroner, medical examiner, or assistant medical examiner**.

3. Subdivisions (1), (5), (8), and (10) of subsection 1 of this section do not apply when the actor is transporting such weapons in a nonfunctioning state or in an unloaded state when ammunition is not readily accessible or when such weapons are not readily accessible. Subdivision (1) of subsection 1 of this section does not apply **to any person twenty-one years of age or older transporting a concealable firearm in the passenger compartment of a motor vehicle, so long as such concealable firearm is otherwise lawfully possessed, nor** when the actor is also in possession of an exposed firearm or projectile weapon for the lawful pursuit of game, or is in his **or her** dwelling unit or upon [business] premises over which the actor has possession, authority or control, or is traveling in a continuous journey peaceably through this state. Subdivision (10) of subsection 1 of this section does not apply if the firearm is otherwise lawfully possessed by a person while traversing school premises for the purposes

of transporting a student to or from school, or possessed by an adult for the purposes of facilitation of a school-sanctioned firearm-related event.

**4.  Subdivisions (1), (8), and (10) of subsection 1 of this section shall not apply to any person who has a valid concealed carry endorsement issued pursuant to section 571.094 or a valid permit or endorsement to carry concealed firearms issued by another state or political subdivision of another state.**

**5.  Subdivisions (3), (4), (5), (6), (7), (8), (9), and (10) of subsection 1 of this section shall not apply to persons who are engaged in a lawful act of defense pursuant to section 563.031, RSMo.**

**6.**  Nothing in this section shall make it unlawful for a student to actually participate in school-sanctioned gun safety courses, student military or ROTC courses, or other school-sponsored firearm-related events, provided the student does not carry a firearm or other weapon readily capable of lethal use into any school, onto any school bus, or onto the premises of any **other** function or activity sponsored or sanctioned by school officials or the district school board.

[5.]  **7.**  Unlawful use of weapons is a class D felony unless committed pursuant to subdivision [(5),] (6), (7), or (8) of subsection 1 of this section, in which cases it is a class B misdemeanor, or subdivision **(5) or** (10) of subsection 1 of this section, in which case it is a class A misdemeanor if the firearm is unloaded and a class D felony if the firearm is loaded, or subdivision (9) of subsection 1 of this section, in which case it is a class B felony, except that if the violation of subdivision (9) of subsection 1 of this section results in injury or death to another person, it is a class A felony.

[6.]  **8.**  Violations of subdivision (9) of subsection 1 of this section shall be punished as follows:

(1)  For the first violation a person shall be sentenced to the maximum authorized term of imprisonment for a class B felony;

(2)  For any violation by a prior offender as defined in section 558.016, RSMo, a person shall be sentenced to the maximum authorized term of imprisonment for a class B felony without the possibility of parole, probation or conditional release for a term of ten years;

(3)  For any violation by a persistent offender as defined in section 558.016, RSMo, a person shall be sentenced to the maximum authorized term of imprisonment for a class B felony without the possibility of parole, probation, or conditional release;

(4)  For any violation which results in injury or death to another person, a person shall be sentenced to an authorized disposition for a class A felony.

[7.]  **9.**  Any person knowingly aiding or abetting any other person in the violation of subdivision (9) of subsection 1 of this section shall be subject to the same penalty as that prescribed by this section for violations by other persons.

**571.094. CONCEALED CARRY ENDORSEMENTS. — 1.  All applicants for concealed carry endorsements issued pursuant to subsection 7 of this section must satisfy the requirements of this section. If the said applicant can show qualification as provided by this section, the county or city sheriff shall issue a certificate of qualification for a concealed carry endorsement. Upon receipt of such certificate, the certificate holder shall apply for a driver's license or nondriver's license with the director of revenue in order to obtain a concealed carry endorsement.  Any person who has been issued a concealed carry endorsement on a driver's license or nondriver's license and such endorsement or license has not been suspended, revoked, canceled, or denied may carry concealed firearms on or about his or her person or within a vehicle.  A concealed carry endorsement shall be valid for a period of three years from the date of issuance or renewal.  The concealed carry endorsement is valid throughout this state.**

2. A certificate of qualification for a concealed carry endorsement issued pursuant to subsection 7 of this section shall be issued by the sheriff or his or her designee of the county or city in which the applicant resides, if the applicant:

(1) Is at least twenty-three years of age, is a citizen of the United States and either:

(a) Has resided in this state for at least six months; or

(b) Is a member of the armed forces stationed in Missouri, or the spouse of such member of the military;

(2) Has not pled guilty to or entered a plea of nolo contendere or been convicted of a crime punishable by imprisonment for a term exceeding one year under the laws of any state or of the United States other than a crime classified as a misdemeanor under the laws of any state and punishable by a term of imprisonment of one year or less that does not involve an explosive weapon, firearm, firearm silencer or gas gun;

(3) Has not been convicted of, pled guilty to or entered a plea of nolo contendere to one or more misdemeanor offenses involving crimes of violence within a five-year period immediately preceding application for a certificate of qualification for a concealed carry endorsement or if the applicant has not been convicted of two or more misdemeanor offenses involving driving while under the influence of intoxicating liquor or drugs or the possession or abuse of a controlled substance within a five-year period immediately preceding application for a certificate of qualification for a concealed carry endorsement;

(4) Is not a fugitive from justice or currently charged in an information or indictment with the commission of a crime punishable by imprisonment for a term exceeding one year under the laws of any state of the United States other than a crime classified as a misdemeanor under the laws of any state and punishable by a term of imprisonment of two years or less that does not involve an explosive weapon, firearm, firearm silencer, or gas gun;

(5) Has not been discharged under dishonorable conditions from the United States armed forces;

(6) Has not engaged in a pattern of behavior, documented in public records, that causes the sheriff to have a reasonable belief that the applicant presents a danger to himself or others;

(7) Is not adjudged mentally incompetent at the time of application or for five years prior to application, or has not been committed to a mental health facility, as defined in section 632.005, RSMo, or a similar institution located in another state following a hearing at which the defendant was represented by counsel or a representative;

(8) Submits a completed application for a certificate of qualification as defined in subsection 3 of this section;

(9) Submits an affidavit attesting that the applicant complies with the concealed carry safety training requirement pursuant to subsections 22 and 23 of this section;

(10) Is not the respondent of a valid full order of protection which is still in effect.

3. The application for a certificate of qualification for a concealed carry endorsement issued by the sheriff of the county of the applicant's residence shall contain only the following information:

(1) The applicant's name, address, telephone number, gender, and date and place of birth;

(2) An affirmation that the applicant is a resident of the state of Missouri and has been a resident thereof for the last six months or is a member of the armed forces stationed in Missouri or the spouse of such a member of the armed forces and is a citizen of the United States;

(3) An affirmation that the applicant is at least twenty-three years of age;

(4) An affirmation that the applicant has not pled guilty to or been convicted of a crime punishable by imprisonment for a term exceeding one year under the laws of any state or of the United States other than a crime classified as a misdemeanor under the laws

of any state and punishable by a term of imprisonment of one year or less that does not involve an explosive weapon, firearm, firearm silencer, or gas gun;

(5) An affirmation that the applicant has not been convicted of, pled guilty to, or entered a plea of nolo contendere to one or more misdemeanor offenses involving crimes of violence within a five-year period immediately preceding application for a certificate of qualification to obtain a concealed carry endorsement or if the applicant has not been convicted of two or more misdemeanor offenses involving driving while under the influence of intoxicating liquor or drugs or the possession or abuse of a controlled substance within a five-year period immediately preceding application for a certificate of qualification to obtain a concealed carry endorsement;

(6) An affirmation that the applicant is not a fugitive from justice or currently charged in an information or indictment with the commission of a crime punishable by imprisonment for a term exceeding one year under the laws of any state or of the United States other than a crime classified as a misdemeanor under the laws of any state and punishable by a term of imprisonment of two years or less that does not involve an explosive weapon, firearm, firearm silencer or gas gun;

(7) An affirmation that the applicant has not been discharged under dishonorable conditions from the United States armed forces;

(8) An affirmation that the applicant is not adjudged mentally incompetent at the time of application or for five years prior to application, or has not been committed to a mental health facility, as defined in section 632.005, RSMo, or a similar institution located in another state, except that a person whose release or discharge from a facility in this state pursuant to chapter 632, RSMo, or a similar discharge from a facility in another state, occurred more than five years ago without subsequent recommitment may apply;

(9) An affirmation that the applicant has received firearms safety training that meets the standards of applicant firearms safety training defined in subsection 22 or 23 of this section;

(10) An affirmation that the applicant, to the applicant's best knowledge and belief, is not the respondent of a valid full order of protection which is still in effect; and

(11) A conspicuous warning that false statements made by the applicant will result in prosecution for perjury pursuant to the laws of the state of Missouri.

4. An application for a certificate of qualification for a concealed carry endorsement shall be made to the sheriff of the county or any city not within a county in which the applicant resides. An application shall be filed in writing, signed under oath and under the penalties of perjury, and shall state whether the applicant complies with each of the requirements specified in subsection 2 of this section. In addition to the completed application, the applicant for a certificate of qualification for a concealed carry endorsement must also submit the following:

(1) A photocopy of a firearms safety training certificate of completion or other evidence of completion of a firearms safety training course that meets the standards established in subsection 22 or 23 of this section; and

(2) A nonrefundable certificate of qualification fee as provided by subsection 10 or 11 of this section.

5. Before an application for a certificate of qualification for a concealed carry endorsement is approved, the sheriff shall make only such inquiries as he or she deems necessary into the accuracy of the statements made in the application. The sheriff may require that the applicant display a Missouri driver's license or nondriver's license or military identification and orders showing the person being stationed in Missouri. In order to determine the applicant's suitability for a certificate of qualification for a concealed carry endorsement, the applicant shall be fingerprinted. The sheriff shall request a criminal background check through the appropriate law enforcement agency within three working days after submission of the properly completed application for a

certificate of qualification for a concealed carry endorsement. If no disqualifying record is identified by the fingerprint check at the state level, the fingerprints shall be forwarded to the Federal Bureau of Investigation for a national criminal history record check. Upon receipt of the completed background check, the sheriff shall issue a certificate of qualification for a concealed carry endorsement within three working days. The sheriff shall issue the certificate within forty-five calendar days if the criminal background check has not been received, provided that the sheriff shall revoke any such certificate and endorsement within twenty-four hours of receipt of any background check that results in a disqualifying record, and shall notify the department of revenue.

6. The sheriff may refuse to approve an application for a certificate of qualification for a concealed carry endorsement if he or she determines that any of the requirements specified in subsection 2 of this section have not been met, or if he or she has a substantial and demonstrable reason to believe that the applicant has rendered a false statement regarding any of the provisions of this section. If the applicant is found to be ineligible, the sheriff is required to deny the application, and notify the applicant in writing, stating the grounds for denial and informing the applicant of the right to submit, within thirty days, any additional documentation relating to the grounds of the denial. Upon receiving any additional documentation, the sheriff shall reconsider his or her decision and inform the applicant within thirty days of the result of the reconsideration. The applicant shall further be informed in writing of the right to appeal the denial pursuant to subsections 29, 30, 31, and 32 of this section. After two additional reviews and denials by the sheriff, the person submitting the application shall appeal the denial pursuant to subsections 29, 30, 31, and 32 of this section.

7. If the application is approved, the sheriff shall issue a certificate of qualification for a concealed carry endorsement to the applicant within a period not to exceed three working days after his or her approval of the application. The applicant shall sign the certificate of qualification in the presence of the sheriff or his or her designee and shall within seven days of receipt of the certificate of qualification take the certificate of qualification to the department of revenue. Upon verification of the certificate of qualification and completion of a driver's license or nondriver's license application pursuant to chapter 302, RSMo, the director of revenue shall issue a new driver's license or nondriver's license with an endorsement which identifies that the applicant has received a certificate of qualification to carry concealed weapons issued pursuant to this section if the applicant is otherwise qualified to receive such driver's license or nondriver's license. The requirements for the director of revenue to issue a concealed carry endorsement pursuant to this subsection shall not be effective until July 1, 2004, and the certificate of qualification issued by a county sheriff pursuant to subsection 1 of this section shall allow the person issued such certificate to carry a concealed weapon pursuant to the requirements of subsection 20 of this section in lieu of the concealed carry endorsement issued by the director of revenue from the effective date of this section until the concealed carry endorsement is issued by the director of revenue on or after July 1, 2004, unless such certificate of qualification has been suspended or revoked for cause.

8. The sheriff shall keep a record of all applications for a certificate of qualification for a concealed carry endorsement and his or her action thereon. The sheriff shall report the issuance of a certificate of qualification to the Missouri uniform law enforcement system. All information on any such certificate that is protected information on any drivers or nondriver's license shall have the same personal protection for purposes of this section. An applicant's status as a holder of a certificate of qualification or a concealed carry endorsement shall not be public information and shall be considered personal protected information. Any person who violates the provisions of this subdivision by disclosing protected information shall be guilty of a class A misdemeanor.

9. Information regarding any holder of a certificate of qualification or a concealed carry endorsement is a closed record.

10. For processing an application for a certificate of qualification for a concealed carry endorsement pursuant to this section, the sheriff in each county shall charge a nonrefundable fee not to exceed one hundred dollars which shall be paid to the treasury of the county to the credit of the sheriff's revolving fund.

11. For processing a renewal for a certificate of qualification for a concealed carry endorsement pursuant to this section, the sheriff in each county shall charge a nonrefundable fee not to exceed fifty dollars which shall be paid to the treasury of the county to the credit of the sheriff's revolving fund.

12. For the purposes of this section, the term sheriff shall include the sheriff of any county or city not within a county or his or her designee and in counties of the first classification the sheriff may designate the chief of police of any city, town, or municipality within such county.

13. (1) A concealed carry endorsement issued pursuant to this section shall be suspended or revoked if the concealed carry endorsement holder becomes ineligible for such concealed carry endorsement under the criteria established in subdivisions (2), (3), (4), (5), and (7) of subsection 2 of this section or upon the issuance of a valid full order of protection.

(2) When a valid full order of protection, or any arrest warrant, discharge, or commitment for the reasons listed in subdivision (2), (3), (4), (5), or (7) of subsection 2 of this section, is issued against a person holding a concealed carry endorsement issued pursuant to this section upon notification of said order, warrant, discharge or commitment or upon an order of a court of competent jurisdiction in a criminal proceeding, a commitment proceeding or a full order of protection proceeding ruling that a person holding a concealed carry endorsement presents a risk of harm to themselves or others, then upon notification of such order, the holder of the concealed carry endorsement shall surrender the driver's license or nondriver's license containing the concealed carry endorsement to the court, to the officer, or other official serving the order, warrant, discharge, or commitment.

(3) The official to whom the driver's license or nondriver's license containing the concealed carry endorsement is surrendered shall issue a receipt to the licensee for the license upon a form, approved by the director of revenue, that serves as a driver's license or a nondriver's license and clearly states the concealed carry endorsement has been suspended. The official shall then transmit the driver's license or a nondriver's license containing the concealed carry endorsement to the circuit court of the county issuing the order, warrant, discharge, or commitment. The concealed carry endorsement issued pursuant to this section shall be suspended until the order is terminated or until the arrest results in a dismissal of all charges. Upon dismissal, the court holding the driver's license or nondriver's license containing the concealed carry endorsement shall return it to the individual.

(4) Any conviction, discharge, or commitment specified in this section shall result in a revocation. Upon conviction, the court shall forward a notice of conviction or action and the driver's license or nondriver's license with the concealed carry endorsement to the department of revenue. The department of revenue shall notify the sheriff of the county which issued the certificate of qualification for a concealed carry endorsement and shall report the change in status of the concealed carry endorsement to the Missouri uniform law enforcement system. The director of revenue shall immediately remove the endorsement issued pursuant to this section from the individual's driving record within three days of the receipt of the notice from the court. The director of revenue shall notify the licensee that he or she must apply for a new license pursuant to chapter 302, RSMo, which does not contain such endorsement. This requirement does not affect the driving

privileges of the licensee. The notice issued by the department of revenue shall be mailed to the last known address shown on the individual's driving record. The notice is deemed received three days after mailing.

14. A concealed carry endorsement shall be renewed for a qualified applicant upon receipt of the properly completed renewal application and the required renewal fee by the sheriff of the county of the applicant's residence. The renewal application shall contain the same required information as set forth in subsection 3 of this section, except that in lieu of the fingerprint requirement of subsection 5 and the firearms safety training, the applicant need only display his or her current driver's license or nondriver's license containing a concealed carry endorsement. Upon successful completion of all renewal requirements, the sheriff shall issue a certificate of qualification which contains the date such certificate was renewed.

15. A person who has been issued a certificate of qualification for a concealed carry endorsement who fails to file a renewal application on or before its expiration date must pay an additional late fee of ten dollars per month for each month it is expired for up to six months. After six months, the sheriff who issued the expired certificate shall notify the director of revenue that such certificate is expired. The director of revenue shall immediately cancel the concealed carry endorsement and remove such endorsement from the individual's driving record and notify the individual of such cancellation. The notice of cancellation of the endorsement shall be conducted in the same manner as described in subsection 13 of this section. Any person who has been issued a certificate of qualification for a concealed carry endorsement pursuant to this section who fails to renew his or her application within the six-month period must reapply for a new certificate of qualification for a concealed carry endorsement and pay the fee for a new application. The director of revenue shall not issue an endorsement on a renewed driver's license or renewed nondriver's license unless the applicant for such license provides evidence that he or she has renewed the certification of qualification for a concealed carry endorsement in the manner provided for such renewal pursuant to this section. If an applicant for renewal of a driver's license or nondriver's license containing a concealed carry endorsement does not want to maintain the concealed carry endorsement, the applicant shall inform the director at the time of license renewal of his or her desire to remove the endorsement. When a driver or nondriver's license applicant informs the director of his or her desire to remove the concealed carry endorsement, the director shall renew the driver's license or nondriver's license without the endorsement appearing on the license if the applicant is otherwise qualified for such renewal.

16. Any person issued a concealed carry endorsement pursuant to this section shall notify the department of revenue and the sheriffs of both the old and new jurisdictions of the endorsement holder's change of residence within thirty days after the changing of a permanent residence. The endorsement holder shall furnish proof to the department of revenue and the sheriff in the new jurisdiction that the endorsement holder has changed his or her residence. The change of residence shall be made by the department of revenue onto the individual's driving record and the new address shall be accessible by the Missouri uniform law enforcement system within three days of receipt of the information.

17. Any person issued a driver's license or nondriver's license containing a concealed carry endorsement pursuant to this section shall notify the sheriff or his or her designee of the endorsement holder's county or city of residence within seven days after actual knowledge of the loss or destruction of his or her driver's license or nondriver's license containing a concealed carry endorsement. The endorsement holder shall furnish a statement to the sheriff that the driver's license or nondriver's license containing the concealed carry endorsement has been lost or destroyed. After notification of the loss or destruction of a driver's license or nondriver's license containing a concealed carry

endorsement, the sheriff shall reissue a new certificate of qualification within three working days of being notified by the concealed carry endorsement holder of its loss or destruction. The reissued certificate of qualification shall contain the same personal information, including expiration date, as the original certificate of qualification. The applicant shall then take the certificate to the department of revenue, and the department of revenue shall proceed on the certificate in the same manner as provided in subsection 7 of this section. Upon application for a license pursuant to chapter 302, RSMo, the director of revenue shall issue a driver's license or nondriver's license containing a concealed carry endorsement if the applicant is otherwise eligible to receive such license.

18. If a person issued a concealed carry endorsement changes his or her name, the person to whom the endorsement was issued shall obtain a corrected certificate of qualification for a concealed carry endorsement with a change of name from the sheriff who issued such certificate upon the sheriff's verification of the name change. The endorsement holder shall furnish proof of the name change to the department of revenue and the sheriff within thirty days of changing his or her name and display his or her current driver's license or nondriver's license containing a concealed carry endorsement. The endorsement holder shall apply for a new driver's license or nondriver's license containing his or her new name. Such application for a driver's license or nondriver's license shall be made pursuant to chapter 302, RSMo. The director of revenue shall issue a driver's license or nondriver's license with concealed carry endorsement with the endorsement holder's new name if the applicant is otherwise eligible for such license. The director of revenue shall take custody of the old driver's license or nondriver's license. The name change shall be made by the department of revenue onto the individual's driving record and the new name shall be accessible by the Missouri uniform law enforcement system within three days of receipt of the information.

19. A concealed carry endorsement shall be automatically invalid after thirty days if the endorsement holder has changed his or her name or changed his or her residence and not notified the department of revenue and sheriff of a change of name or residence as required in subsections 16 and 18 of this section.

20. A concealed carry endorsement issued pursuant to this section or a concealed carry endorsement or permit issued by another state or political subdivision of another state shall authorize the person in whose name the permit or endorsement is issued to carry concealed firearms on or about his or her person or vehicle throughout the state. No driver's license or nondriver's license containing a concealed carry endorsement issued pursuant to this section or a concealed carry endorsement or permit issued by another state or political subdivision of another state shall authorize any person to carry concealed firearms into:

(1) Any police, sheriff, or highway patrol office or station without the consent of the chief law enforcement officer in charge of that office or station. Possession of a firearm in a vehicle on the premises of the office or station shall not be a criminal offense so long as the firearm is not removed from the vehicle or brandished while the vehicle is on the premises;

(2) Within twenty-five feet of any polling place on any election day. Possession of a firearm in a vehicle on the premises of the polling place shall not be a criminal offense so long as the firearm is not removed from the vehicle or brandished while the vehicle is on the premises;

(3) The facility of any adult or juvenile detention or correctional institution, prison or jail. Possession of a firearm in a vehicle on the premises of any adult, juvenile detention, or correctional institution, prison or jail shall not be a criminal offense so long as the firearm is not removed from the vehicle or brandished while the vehicle is on the premises;

(4) Any courthouse solely occupied by the circuit, appellate or supreme court, or any courtrooms, administrative offices, libraries or other rooms of any such court whether or not such court solely occupies the building in question. This subdivision shall also include, but not be limited to, any juvenile, family, drug, or other court offices, any room or office wherein any of the courts or offices listed in this subdivision are temporarily conducting any business within the jurisdiction of such courts or offices, and such other locations in such manner as may be specified by supreme court rule pursuant to subdivision (6) of this subsection. Nothing in this subdivision shall preclude those persons listed in subdivision (1) of subsection 2 of section 571.030 while within their jurisdiction and on duty, those persons listed in subdivisions (2) and (4) of subsection 2 of section 571.030, or such other persons who serve in a law enforcement capacity for a court as may be specified by supreme court rule pursuant to subdivision (6) of this subsection, from carrying a concealed firearm within any of the areas described in this subdivision. Possession of a firearm in a vehicle on the premises of any of the areas listed in this subdivision shall not be a criminal offense so long as the firearm is not removed from the vehicle or brandished while the vehicle is on the premises;

(5) Any meeting of the governing body of a unit of local government; or any meeting of the general assembly or a committee of the general assembly, except that nothing in this subdivision shall preclude a member of the body, holding a valid concealed carry endorsement from carrying a concealed firearm at a meeting of the body which he or she is a member. Possession of a firearm in a vehicle on the premises shall not be a criminal offense so long as the firearm is not removed from the vehicle or brandished while the vehicle is on the premises;

(6) The general assembly, supreme court, county or municipality may by rule, administrative regulation, or ordinance, prohibit or limit the carrying of concealed firearms by endorsement holders in that portion of a building owned, leased or controlled by that unit of government. Any portion of a building in which the carrying of concealed firearms is prohibited or limited shall be clearly identified by signs posted at the entrance to the restricted area. The statute, rule or ordinance shall exempt any building used for public housing by private persons, highways or rest areas, firing ranges, and private dwellings owned, leased, or controlled by that unit of government from any restriction on the carrying or possession of a firearm. The statute, rule or ordinance shall not specify any criminal penalty for its violation but may specify that persons violating the statute, rule or ordinance may be denied entrance to the building, ordered to leave the building and if employees of the unit of government, be subjected to disciplinary measures for violation of the provisions of the statute, rule or ordinance. The provisions of this subdivision shall not apply to any other unit of government;

(7) Any establishment licensed to dispense intoxicating liquor or nonintoxicating beer for consumption on the premises, which portion is primarily devoted to that purpose without the consent of the owner or manager. The provisions of this subdivision shall not apply to the licensee of said establishment. The provisions of this subdivision shall not apply to any bona fide restaurant open to the general public having dining facilities for not less than fifty persons and that receives at least fifty-one percent of its gross annual income from the dining facilities by the sale of food. This subdivision does not prohibit the possession of a firearm in a vehicle on the premises of the establishment and shall not be a criminal offense so long as the firearm is not removed from the vehicle or brandished while the vehicle is on the premises. Nothing in this subdivision authorizes any individual who has been issued a concealed carry endorsement to possess any firearm while intoxicated;

(8) Any area of an airport to which access is controlled by the inspection of persons and property. Possession of a firearm in a vehicle on the premises of the airport shall not

be a criminal offense so long as the firearm is not removed from the vehicle or brandished while the vehicle is on the premises;

(9)  Any place where the carrying of a firearm is prohibited by federal law;

(10)  Any higher education institution or elementary or secondary school facility without the consent of the governing body of the higher education institution or a school official or the district school board.  Possession of a firearm in a vehicle on the premises of any higher education institution or elementary or secondary school facility shall not be a criminal offense so long as the firearm is not removed from the vehicle or brandished while the vehicle is on the premises;

(11)  Any portion of a building used as a child care facility without the consent of the manager.  Nothing in this subdivision shall prevent the operator of a child care facility in a family home from owning or possessing a firearm or a driver's license or nondriver's license containing a concealed carry endorsement;

(12)  Any riverboat gambling operation accessible by the public without the consent of the owner or manager pursuant to rules promulgated by the gaming commission. Possession of a firearm in a vehicle on the premises of a riverboat gambling operation shall not be a criminal offense so long as the firearm is not removed from the vehicle or brandished while the vehicle is on the premises;

(13)  Any gated area of an amusement park.  Possession of a firearm in a vehicle on the premises of the amusement park shall not be a criminal offense so long as the firearm is not removed from the vehicle or brandished while the vehicle is on the premises;

(14)  Any church or other place of religious worship without the consent of the minister or person or persons representing the religious organization that exercises control over the place of religious worship.  Possession of a firearm in a vehicle on the premises shall not be a criminal offense so long as the firearm is not removed from the vehicle or brandished while the vehicle is on the premises;

(15)  Any private property whose owner has posted the premises as being off-limits to concealed firearms by means of one or more signs displayed in a conspicuous place of a minimum size of eleven inches by fourteen inches with the writing thereon in letters of not less than one inch.  The owner, business or commercial lessee, manager of a private business enterprise, or any other organization, entity, or person may prohibit persons holding a concealed carry endorsement from carrying concealed firearms on the premises and may prohibit employees, not authorized by the employer, holding a concealed carry endorsement from carrying concealed firearms on the property of the employer. If the building or the premises are open to the public, the employer of the business enterprise shall post signs on or about the premises if carrying a concealed firearm is prohibited. Possession of a firearm in a vehicle on the premises shall not be a criminal offense so long as the firearm is not removed from the vehicle or brandished while the vehicle is on the premises.  An employer may prohibit employees or other persons holding a concealed carry endorsement from carrying a concealed firearm in vehicles owned by the employer;

(16)  Any sports arena or stadium with a seating capacity of five thousand or more. Possession of a firearm in a vehicle on the premises shall not be a criminal offense so long as the firearm is not removed from the vehicle or brandished while the vehicle is on the premises;

(17)  Any hospital accessible by the public. Possession of a firearm in a vehicle on the premises of a hospital shall not be a criminal offense so long as the firearm is not removed from the vehicle or brandished while the vehicle is on the premises.

21.  Carrying of a concealed firearm in a location specified in subdivisions (1) to (17) of subsection 20 of this section by any individual who holds concealed carry endorsement issued pursuant to this section shall not be a criminal act but may subject the person to denial to the premises or removal from the premises.  If such person refuses to leave the premises and a peace officer is summoned, such person may be issued a citation for an

amount not to exceed one hundred dollars for the first offense. If a second citation for a similar violation occurs within a six-month period, such person shall be fined an amount not to exceed two hundred dollars and his or her endorsement to carry concealed firearms shall be suspended for a period of one year. If a third citation for a similar violation is issued within one year of the first citation such person shall be fined an amount not to exceed five hundred dollars and shall have his or her concealed carry endorsement revoked and such person shall not be eligible for a concealed carry endorsement for a period of three years. Upon conviction of charges arising from a citation issued pursuant to this subsection, the court shall notify the sheriff of the county which issued the certificate of qualification for a concealed carry endorsement and the department of revenue. The sheriff shall suspend or revoked the certificate of qualification for a concealed carry endorsement and the department of revenue shall issue a notice of such suspension or revocation of the concealed carry endorsement and take action to remove the concealed carry endorsement from the individual's driving record. The director of revenue shall notify the licensee that he or she must apply for a new license pursuant to chapter 302, RSMo, which does not contain such endorsement. A concealed carry endorsement suspension pursuant to this section shall be reinstated at the time of the renewal of his or her driver's license. The notice issued by the department of revenue shall be mailed to the last known address shown on the individual's driving record. The notice is deemed received three days after mailing.

22. An applicant for a concealed carry endorsement shall demonstrate knowledge of firearms safety training. This requirement shall be fully satisfied if the applicant for a concealed carry endorsement:

(1) Submits a photocopy of a certificate of firearms safety training course completion, as defined in subsection 23 of this section, signed by a qualified firearms safety instructor as defined in subsection 26 of this section; or

(2) Submits a photocopy of a certificate that shows the applicant completed a firearms safety course given by or under the supervision of any state, county, municipal, or federal law enforcement agency; or

(3) Is a qualified firearms safety instructor as defined in subsection 26 of this section.

23. A certificate of firearms safety training course completion may be issued to any applicant by any qualified firearms safety instructor. On the certificate of course completion the qualified firearms safety instructor shall affirm that the individual receiving instruction has taken and passed a firearms safety course of at least eight hours in length taught by the instructor that included:

(1) Handgun safety in the classroom, at home, on the firing range and while carrying the firearm;

(2) A physical demonstration performed by the applicant that demonstrated his or her ability to safely load and unload a revolver and a semiautomatic pistol and demonstrated his or her marksmanship with both;

(3) The basic principles of marksmanship;

(4) Care and cleaning of concealable firearms;

(5) Safe storage of firearms at home;

(6) The requirements of this state for obtaining a certificate of qualification for a concealed carry endorsement from the sheriff of the individual's county of residence and a concealed carry endorsement issued by the department of revenue;

(7) The laws relating to firearms as prescribed in this chapter;

(8) The laws relating to the justifiable use of force as prescribed in chapter 563, RSMo;

(9) A live firing exercise of sufficient duration for each applicant to fire a handgun, from a standing position or its equivalent, a minimum of fifty rounds at a distance of seven yards from a B-27 silhouette target or an equivalent target;

(10) A live fire test administered to the applicant while the instructor was present of twenty rounds from a standing position or its equivalent at a distance from a B-27 silhouette target, or an equivalent target, of seven yards.

24. A qualified firearms safety instructor shall not give a grade of "passing" to an applicant for a concealed carry endorsement who:

(1) Does not follow the orders of the qualified firearms instructor or cognizant range officer; or

(2) Handles a firearm in a manner that, in the judgement of the qualified firearm safety instructor, poses a danger to the applicant or to others; or

(3) During the live fire testing portion of the course fails to hit the silhouette portion of the targets with at least fifteen rounds.

25. Qualified firearms safety instructors who provide firearms safety instruction to any person who applies for a concealed carry endorsement shall:

(1) Make the applicant's course records available upon request to the sheriff of the county in which the applicant resides;

(2) Maintain all course records on students for a period of no less than four years from course completion date; and

(3) Not have more than forty students in the classroom portion of the course or more than five students per range officer engaged in range firing.

26. A firearms safety instructor shall be considered to be a qualified firearms safety instructor by any sheriff issuing a certificate of qualification for a concealed carry endorsement pursuant to this section if the instructor:

(1) Is a valid firearms safety instructor certified by the National Rifle Association holding a rating as a personal protection instructor or pistol marksmanship instructor; or

(2) Submits a photocopy of a certificate from a firearms safety instructor's course offered by a local, state, or federal governmental agency; or

(3) Submits a photocopy of a certificate from a firearms safety instructor course approved by the department of public safety; or

(4) Has successfully completed a firearms safety instructor course given by or under the supervision of any state, county, municipal, or federal law enforcement agency; or

(5) Is a certified police officer firearms safety instructor.

27. Any firearms safety instructor who knowingly provides any sheriff with false information concerning an applicant's performance on the live fire exercise or test administered to the applicant by the instructor pursuant to subdivision (9) or (10) of subsection 23 of this section shall be guilty of a class C misdemeanor.

28. In any case when the sheriff refuses to issue a certificate of qualification or to act on an application for such certificate, the denied applicant shall have the right to appeal the denial within thirty days of receiving written notice of the denial. Such appeals shall be heard in small claims court as defined in section 482.300, RSMo, and the provisions of sections 482.300, 482.310 and 482.335, RSMo, shall apply to such appeals.

29. A denial of or refusal to act on an application for a certificate of qualification may be appealed by filing with the clerk of the small claims court a copy of the sheriff's written refusal and a form substantially similar to the appeal form provided in this section. Appeal forms shall be provided by the clerk of the small claims court free of charge to any person:

## SMALL CLAIMS COURT

In the Circuit Court of........................ Missouri

........................................., Denied Applicant

               )
               )
vs.      )   Case Number...................
               )
               )

....................................................., Sheriff

Return Date ...............

## APPEAL OF A DENIAL OF CERTIFICATE OF QUALIFICATION
## FOR A CONCEALED CARRY ENDORSEMENT

The denied applicant states that his or her properly completed application for a certificate of qualification for a concealed carry endorsement was denied by the sheriff of ......... County, Missouri, without just cause. The denied applicant affirms that all of the statements in the application are true.

....................................., Denied Applicant

30. The notice of appeal in a denial of a certificate of qualification for a concealed carry endorsement appeal shall be made to the sheriff in a manner and form determined by the small claims court judge.

31. If at the hearing the person shows he or she is entitled to the requested certificate of qualification for a concealed carry endorsement, the court shall issue an appropriate order to cause the issuance of the certificate of qualification for a concealed carry endorsement. Costs shall not be assessed against the sheriff unless the action of the sheriff is determined by the judge to be arbitrary and capricious.

32. Any person aggrieved by any final judgment rendered by a small claims court in a denial of a certificate of qualification for a concealed carry endorsement appeal may have a right to trial de novo as provided in sections 512.180 to 512.320, RSMo.

33. Any person who has knowledge that another person, who was issued a certificate of qualification for a concealed carry endorsement pursuant to this section, never was or no longer is eligible for such endorsement under the criteria established in this section, may file a petition with the clerk of the small claims court to revoke that person's certificate of qualification for a concealed carry endorsement and such person's concealed carry endorsement. The petition shall be in a form substantially similar to the petition for revocation of concealed carry endorsement provided in this section. Appeal forms shall be provided by the clerk of the small claims court free of charge to any person:

## SMALL CLAIMS COURT

In the Circuit Court of ............................ Missouri

...................................., PLAINTIFF

)
)
vs.          )     Case Number ....................
)
)

...................................., DEFENDANT,
Carry Endorsement Holder

..............................., DEFENDANT,
Sheriff of Issuance

## PETITION FOR REVOCATION
## OF CERTIFICATE OF QUALIFICATION
## OR CONCEALED CARRY ENDORSEMENT

Plaintiff states to the court that the defendant, .........................................., has a certificate of qualification or a concealed carry endorsement issued pursuant to section 571.094, RSMo, and that the defendant's certificate of qualification or concealed carry endorsement should now be revoked because the defendant either never was or no longer is eligible for such a certificate or endorsement pursuant to the provisions of section

571.094, RSMo, specifically plaintiff states that defendant, .............., never was or no longer is eligible for such certificate or endorsement for one or more of the following reasons:

**(CHECK BELOW EACH REASON THAT APPLIES TO THIS DEFENDANT)**
☐ Defendant is not at least twenty-three years of age.
☐ Defendant is not a citizen of the United States.
☐ Defendant had not resided in this state for at least six months prior to issuance of the permit and does not qualify as a military member or spouse of a military member stationed in Missouri.
☐ Defendant has pled guilty to or been convicted of a crime punishable by imprisonment for a term exceeding one year under the laws of any state or of the United States other than a crime classified as a misdemeanor under the laws of any state and punishable by a term of imprisonment of one year or less that does not involve an explosive weapon, firearm, firearm silencer, or gas gun.
☐ Defendant has been convicted of, pled guilty to or entered a plea of nolo contendere to one or more misdemeanor offenses involving crimes of violence within a five-year period immediately preceding application for a certificate of qualification or concealed carry endorsement issued pursuant to section 511.094, RSMo, or if the applicant has been convicted of two or more misdemeanor offenses involving driving while under the influence of intoxicating liquor or drugs or the possession or abuse of a controlled substance within a five-year period immediately preceding application for a certificate of qualification or a concealed carry endorsement issued pursuant to section 571.094, RSMo.
☐ Defendant is a fugitive from justice or currently charged in an information or indictment with the commission of a crime punishable by imprisonment for a term exceeding one year under the laws of any state of the United States other than a crime classified as a misdemeanor under the laws of any state and punishable by a term of imprisonment of one year or less that does not involve an explosive weapon, firearm, firearm silencer, or gas gun.
☐ Defendant has been discharged under dishonorable conditions from the United States armed forces.
☐ Defendant is reasonably believed by the sheriff to be a danger to self or others based on previous, documented pattern.
☐ Defendant is adjudged mentally incompetent at the time of application or for five years prior to application, or has been committed to a mental health facility, as defined in section 632.005, RSMo, or a similar institution located in another state, except that a person whose release or discharge from a facility in this state pursuant to chapter 632, RSMo, or a similar discharge from a facility in another state, occurred more than five years ago without subsequent recommitment may apply.
☐ Defendant failed to submit a completed application for a certificate of qualification or concealed carry endorsement issued pursuant to section 571.094, RSMo.
☐ Defendant failed to submit to or failed to clear the required background check.
☐ Defendant failed to submit an affidavit attesting that the applicant complies with the concealed carry safety training requirement pursuant to subsection 22 of section 571.094, RSMo.
The plaintiff subject to penalty for perjury states that the information contained in this petition is true and correct to the best of the plaintiff's knowledge, is reasonably based upon the petitioner's personal knowledge and is not primarily intended to harass the defendant/respondent named herein.
............................................................, PLAINTIFF
    34. If at the hearing the plaintiff shows that the defendant was not eligible for the certificate of qualification or the concealed carry endorsement issued pursuant to this section, at the time of issuance or renewal or is no longer eligible for a certificate of

qualification or the concealed carry endorsement issued pursuant to the provisions of this section, the court shall issue an appropriate order to cause the revocation of the certificate of qualification or concealed carry endorsement. Costs shall not be assessed against the sheriff.

35. The finder of fact, in any action brought against an endorsement holder pursuant to subsection 33 of this section, shall make findings of fact and the court shall make conclusions of law addressing the issues at dispute. If it is determined that the plaintiff in such an action acted without justification or with malice or primarily with an intent to harass the endorsement holder or that there was no reasonable basis to bring the action, the court shall order the plaintiff to pay the defendant/respondent all reasonable costs incurred in defending the action including, but not limited to, attorney's fees, deposition costs, and lost wages. Once the court determines that the plaintiff is liable to the defendant/respondent for costs and fees, the extent and type of fees and costs to be awarded should be liberally calculated in defendant/respondent's favor. Notwithstanding any other provision of law, reasonable attorney's fees shall be presumed to be at least one hundred fifty dollars per hour.

36. Any person aggrieved by any final judgment rendered by a small claims court in a petition for revocation of a certificate of qualification or concealed carry endorsement may have a right to trial de novo as provided in sections 512.180 to 512.320, RSMo.

37. The office of the county sheriff or any employee or agent of the county sheriff shall not be liable for damages in any civil action arising from alleged wrongful or improper granting, renewing, or failure to revoke a certificate of qualification or a concealed carry endorsement issued pursuant to this section, so long as the sheriff acted in good faith.

38. Any person issued a concealed carry endorsement pursuant to this section shall carry the concealed carry endorsement at all times the person is carrying a concealed firearm and shall display the concealed carry endorsement upon the request of any peace officer. Failure to comply with this subsection shall not be a criminal offense but the concealed carry endorsement holder may be issued a citation for an amount not to exceed thirty-five dollars.

39. Notwithstanding any other provisions of law, the director of revenue by carrying out his or her requirement to issue a driver or nondriver's license reflecting that a concealed carry permit has been granted, shall bear no liability and shall be immune from any claims for damages resulting from any determination made regarding the qualification of any person for such permit or for any actions stemming from the conduct of any person issued such a permit. By issuing the permit on the driver or nondriver's license the director of revenue is merely acting as a scrivener for any determination made by the sheriff that the person is qualified for the permit.

Vetoed by Governor July 3, 2003
Veto overridden September 11, 2003

---

# SB 13  [SS SB 13]

EXPLANATION — Matter enclosed in bold-faced brackets [thus] in this bill is not enacted and is intended to be omitted in the law.

**Prohibits certain suits by political subdivisions and the state against firearm manufacturers and dealers.**

ACTS AND RESOLUTIONS

OF THE

# GENERAL
# ASSEMBLY

OF THE

STATE OF GEORGIA

———

## 2010

———



COMPILED AND PUBLISHED BY AUTHORITY OF THE STATE

## Volume One
## Book One

for two weeks immediately preceding the date of the election in the official organ of the county. The ballot shall have written or printed thereon the following:

'( ) YES   Shall the 1 percent retail sales and use tax being levied within the special
 ( ) NO    district within _____ County be terminated?'

(b) All persons desiring to vote in favor of discontinuing the tax shall vote 'Yes,' and all persons opposed to discontinuing the tax shall vote 'No.' If more than one-half of the votes cast are in favor of discontinuing the tax, then the tax shall cease to be levied on the first day of the second calendar quarter following the month in which the commissioner receives the certification of the result of the election; otherwise, the tax shall continue to be levied, and the question of the discontinuing of the tax shall not again be submitted to the voters of the special district until after 24 months immediately following the month in which the election was held. It shall be the duty of the election superintendent to hold and conduct such elections under the same rules and regulations as govern special elections. It shall be such superintendent's further duty to canvass the returns, declare and certify the result of the election, and certify the result to the Secretary of State and to the commissioner. The expense of the election shall be borne by the county whose geographical boundary is conterminous with that of the special district holding the election.'

**SECTION 5.**

This Act shall become effective upon its approval by the Governor or upon its becoming law without such approval.

**SECTION 6.**

All laws and parts of laws in conflict with this Act are repealed.

Approved June 4, 2010.

————

**CRIMES – WEAPONS; MULTIPLE CHANGES
FOR CARRYING AND POSSESSION.**

No. 643 (Senate Bill No. 308).

AN ACT

To amend Title 16 of the Official Code of Georgia Annotated, relating to crimes and offenses, so as to clarify and change provisions regarding the carrying and possession of weapons; to provide for definitions; to provide for the offense of carrying a weapon without a license; to prohibit carrying weapons in unauthorized locations; to change provisions

A52

964                 GENERAL ACTS AND RESOLUTIONS, VOL. I

relating to carrying weapons within school safety zones, at school functions, or on school property; to change provisions relating to carrying a pistol without a license; to change provisions relating to the license to carry a pistol or revolver and the licensing exceptions; to conform cross-references with definitions; to provide for a weapons carry license; to amend various titles of the Official Code of Georgia Annotated so as to conform and correct cross-references; to provide for effective dates and applicability; to provide for related matters; to repeal conflicting laws; and for other purposes.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF GEORGIA:

PART I
CARRYING A WEAPON IN GEORGIA
SECTION 1-1.

Title 16 of the Official Code of Georgia Annotated, relating to crimes and offenses, is amended by revising Part 3 of Article 4 of Chapter 11, relating to carrying and possession of firearms, by adding a new Code section to read as follows:

'16-11-125.1.

As used in this part, the term:

(1) 'Handgun' means a firearm of any description, loaded or unloaded, from which any shot, bullet, or other missile can be discharged by an action of an explosive where the length of the barrel, not including any revolving, detachable, or magazine breech, does not exceed 12 inches; provided, however, that the term 'handgun' shall not include a gun which discharges a single shot of .46 centimeters or less in diameter.

(2) 'Knife' means a cutting instrument designed for the purpose of offense and defense consisting of a blade that is greater than five inches in length which is fastened to a handle.

(3) 'License holder' means a person who holds a valid weapons carry license.

(4) 'Long gun' means a firearm with a barrel length of at least 18 inches and overall length of at least 26 inches designed or made and intended to be fired from the shoulder and designed or made to use the energy of the explosive in a fixed:

(A) Shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger or from which any shot, bullet, or other missile can be discharged; or

(B) Metallic cartridge to fire only a single projectile through a rifle bore for each single pull of the trigger;

provided, however, that the term 'long gun' shall not include a gun which discharges a single shot of .46 centimeters or less in diameter.

(5) 'Weapon' means a knife or handgun.

(6) 'Weapons carry license' or 'license' means a license issued pursuant to Code Section 16-11-129.'

A53

## SECTION 1-2.

Said title is further amended by revising Code Section 16-11-126, relating to carrying a concealed weapon, as follows:

'16-11-126.

(a) Any person who is not prohibited by law from possessing a handgun or long gun may have or carry on his or her person a weapon or long gun on his or her property or inside his or her home, motor vehicle, or place of business without a valid weapons carry license.

(b) Any person who is not prohibited by law from possessing a handgun or long gun may have or carry on his or her person a long gun without a valid weapons carry license, provided that if the long gun is loaded, it shall only be carried in an open and fully exposed manner.

(c) Any person who is not prohibited by law from possessing a handgun or long gun may have or carry any handgun provided that it is enclosed in a case and unloaded.

(d) Any person who is not prohibited by law from possessing a handgun or long gun who is eligible for a weapons carry license may transport a handgun or long gun in any private passenger motor vehicle; provided, however, that private property owners or persons in legal control of property through a lease, rental agreement, licensing agreement, contract, or any other agreement to control access to such property shall have the right to forbid possession of a weapon or long gun on their property, except as provided in Code Section 16-11-135.

(e) Any person licensed to carry a handgun or weapon in any other state whose laws recognize and give effect to a license issued pursuant to this part shall be authorized to carry a weapon in this state, but only while the licensee is not a resident of this state; provided, however, that such licensee shall carry the weapon in compliance with the laws of this state.

(f) Any person with a valid hunting or fishing license on his or her person, or any person not required by law to have a hunting or fishing license, who is engaged in legal hunting, fishing, or sport shooting when the person has the permission of the owner of the land on which the activities are being conducted may have or carry on his or her person a handgun or long gun without a valid weapons carry license while hunting, fishing, or engaging in sport shooting.

(g) Notwithstanding Code Sections 12-3-10, 27-3-1.1, 27-3-6, and 16-12-122 through 16-12-127, any person with a valid weapons carry license may carry a weapon in all parks, historic sites, or recreational areas, as such term is defined in Code Section 12-3-10, including all publicly owned buildings located in such parks, historic sites, and recreational areas, in wildlife management areas, and on public transportation; provided, however, that a person shall not carry a handgun into a place where it is prohibited by federal law.

(h)(1) No person shall carry a weapon without a valid weapons carry license unless he or she meets one of the exceptions to having such license as provided in subsections (a) through (g) of this Code section.

A54

(2) A person commits the offense of carrying a weapon without a license when he or she violates the provisions of paragraph (1) of this subsection.

(i) Upon conviction of the offense of carrying weapon without a valid weapons carry license, a person shall be punished as follows:

(1) For the first offense, he or she shall be guilty of a misdemeanor; and

(2) For the second offense within five years, as measured from the dates of previous arrests for which convictions were obtained to the date of the current arrest for which a conviction is obtained, and for any subsequent offense, he or she shall be guilty of a felony and, upon conviction thereof, shall be imprisoned for not less than two years and not more than five years.'

## SECTION 1-3.

Said title is further is amended by revising Code Section 16-11-127, relating to the offense of carrying a deadly weapon to or at public gatherings and affirmative defenses, as follows:

'16-11-127.

(a) As used in this Code section, the term:

(1) 'Bar' means an establishment that is devoted to the serving of alcoholic beverages for consumption by guests on the premises and in which the serving of food is only incidental to the consumption of those beverages, including, but not limited to, taverns, nightclubs, cocktail lounges, and cabarets.

(2) 'Courthouse' means a building occupied by judicial courts and containing rooms in which judicial proceedings are held.

(3) 'Government building' means:

(A) The building in which a government entity is housed;

(B) The building where a government entity meets in its official capacity; provided, however, that if such building is not a publicly owned building, such building shall be considered a government building for the purposes of this Code section only during the time such government entity is meeting at such building; or

(C) The portion of any building that is not a publicly owned building that is occupied by a government entity.

(4) 'Government entity' means an office, agency, authority, department, commission, board, body, division, instrumentality, or institution of the state or any county, municipal corporation, consolidated government, or local board of education within this state.

(5) 'Parking facility' means real property owned or leased by a government entity, courthouse, jail, prison, place of worship, or bar that has been designated by such government entity, courthouse, jail, prison, place of worship, or bar for the parking of motor vehicles at a government building or at such courthouse, jail, prison, place of worship, or bar.

(b) A person shall be guilty of carrying a weapon or long gun in an unauthorized location and punished as for a misdemeanor when he or she carries a weapon or long gun while:

(1) In a government building;

(2) In a courthouse;

(3) In a jail or prison;

(4) In a place of worship;

(5) In a state mental health facility as defined in Code Section 37-1-1 which admits individuals on an involuntary basis for treatment of mental illness, developmental disability, or addictive disease; provided, however, that carrying a weapon or long gun in such location in a manner in compliance with paragraph (3) of subsection (d) of this Code section shall not constitute a violation of this subsection;

(6) In a bar, unless the owner of the bar permits the carrying of weapons or long guns by license holders;

(7) On the premises of a nuclear power facility, except as provided in Code Section 16-11-127.2, and the punishment provisions of Code Section 16-11-127.2 shall supersede the punishment provisions of this Code section; or

(8) Within 150 feet of any polling place, except as provided in subsection (i) of Code Section 21-2-413.

(c) Except as provided in Code Section 16-11-127.1, a license holder or person recognized under subsection (e) of Code Section 16-11-126 shall be authorized to carry a weapon as provided in Code Section 16-11-135 and in every location in this state not listed in subsection (b) of this Code section; provided, however, that private property owners or persons in legal control of property through a lease, rental agreement, licensing agreement, contract, or any other agreement to control access to such property shall have the right to forbid possession of a weapon or long gun on their property, except as provided in Code Section 16-11-135. A violation of subsection (b) of this Code section shall not create or give rise to a civil action for damages.

(d) Subsection (b) of this Code section shall not apply:

(1) To the use of weapons or long guns as exhibits in a legal proceeding, provided such weapons or long guns are secured and handled as directed by the personnel providing courtroom security or the judge hearing the case;

(2) To a license holder who approaches security or management personnel upon arrival at a location described in subsection (b) of this Code section and notifies such security or management personnel of the presence of the weapon or long gun and explicitly follows the security or management personnel's direction for removing, securing, storing, or temporarily surrendering such weapon or long gun; and

(3) To a weapon or long gun possessed by a license holder which is under the possessor's control in a motor vehicle or is in a locked compartment of a motor vehicle or one which is in a locked container in or a locked firearms rack which is on a motor vehicle and such vehicle is parked in a parking facility.'

enforcement agencies from obtaining records relating to licensing and possession of firearms as provided by law.'

## PART III
## EFFECTIVE DATE, APPLICABILITY, AND REPEALER
## SECTION 3-1.

This Act shall become effective upon its approval by the Governor or upon its becoming law without such approval and shall apply to all offenses committed on and after such date. The enactment of this Act shall not affect any prosecutions for acts occurring before the effective date of this Act and shall not act as an abatement of any such prosecutions.

## SECTION 3-2.
All laws and parts of laws in conflict with this Act are repealed.

Approved June 4, 2010.

---

## REVENUE – PUBLIC-PRIVATE TRANSPORTATION PROJECTS; EXEMPTIONS; SPECIAL FRANCHISES.

No. 644 (House Bill No. 1186).

### AN ACT

To amend Chapter 5 of Title 48 of the Official Code of Georgia Annotated, relating to ad valorem taxation of property, so as to provide for an ad valorem tax exemption for certain public-private transportation projects; to provide that certain public-private transportation projects shall not constitute special franchises; to provide for an effective date; to repeal conflicting laws; and for other purposes.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF GEORGIA:

## SECTION 1.
Chapter 5 of Title 48 of the Official Code of Georgia Annotated, relating to ad valorem taxation of property, is amended in Code Section 48-5-41, relating to property exempt from ad valorem taxation, by adding a new subparagraph in paragraph (1) of subsection (a) as follows: