UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JIMMIE HARDAWAY, JR., LARRY A. BOYD,
FIREARMS POLICY COALITION, INC., and
SECOND AMENDMENT FOUNDATION

                                                   Plaintiffs,

                            v.

                                  No. 22-cv-00771 (JLS)

STEVEN A. NIGRELLI, in his official capacity as
Superintendent of the New York State Police, BRIAN D.
SEAMAN, in his official capacity as District Attorney for the
County of Niagara, and JOHN J. FLYNN, in his official
capacity as District Attorney for the County of Erie,

                                                   Defendants.

## STATE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

                                        LETITIA JAMES
                                        Attorney General
                                        State of New York
                                        350 Main Place, Suite 300A
                                        Buffalo, New York 14202

Ryan L. Belka
Assistant Attorney General
<u>Of Counsel</u>

1

Defendant Steven A. Nigrelli, sued in his official capacity as Superintendent of the New York State Police, respectfully submits this memorandum of law in support of the State's Motion to Dismiss.

## STATUTORY AND PROCEUDRAL BACKGROUND

On July 1, 2022, the Concealed Carry Improvement Act ("CCIA") was passed by the New York State Legislature in special session, then promptly signed into law by Governor Kathy Hochul. The bill was specifically designed "to align with the Supreme Court's recent decision in []Bruen" See Press Release, July 1, 2022, available at https://on.ny.gov/3BM6Hz7.

In Bruen, the Supreme Court found that a single provision of New York's gun licensing regime was unconstitutional: the provision that required an applicant to demonstrate "proper cause" to obtain a license to carry a concealed weapon. The Court held that requiring such a heightened, individualized need for self-defense to obtain a license violated the Second Amendment. See Bruen at 2123 n.1. The Court did not address any other provision of New York's gun licensing or related statutes.

The Sponsor's Memo for the CCIA makes it clear that the Legislature was set on complying with Bruen and "protect[ing] individuals' Second Amendment rights as determined by the Supreme Court," while at the same time enacting measures to "prevent[] death and injury by firearms." The legislation updated New York's licensing scheme to eliminate the "proper cause" requirement that was deemed unconstitutional by Bruen, to clarify the requirement of "good moral character," and to establish additional application and training requirements. Under this bill, applicants who successfully meet New York's conceal carry license applications requirements will receive their license. See S51001 State Senate Sponsor Memo.[1]

---

[1] https://www.nysenate.gov/legislation/bills/2021/S51001

One part of the CCIA, Penal Law § 265.01-e, enumerates a set of "sensitive locations" in which individuals generally may not possess "a firearm, rifle or shotgun." Penal Law § 265.01-e(1). The Supreme Court has repeatedly emphasized the constitutionality of "laws forbidding the carrying of firearms in sensitive places," and instructed that they are "presumptively lawful." Bruen, 142 S.Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) (quoting D.C. v. Heller, 554 U.S. 570, 626-27 & n.26 (2008)); accord McDonald v. City of Chicago, 561 U.S. 742, 786 (2010)). As relevant here, the list includes "any place of worship or religious observation." Id. § 265.01-e(2)(c) (the "Place of Worship Provision"). This law protects people at worship by making it a crime to bring a firearm into a church, synagogue, or other place of religious observation. In order to help protect those within, the law contains exceptions for police officers, peace officers, registered security guards, active-duty military personnel, and other statutorily designated persons. See id. § 265.01-e(3).

On November 3, 2022, this Court barred the enforcement of the Place of Worship provision. See [ECF No. 52]. Importantly, this Court's pre-enforcement standing analysis in *Hardaway*, hinged largely on government officials' public statements to establish "'threatened enforcement of a law' that is 'sufficiently imminent' to establish standing. See, [ECF No. 52] at p. 8-9. In addition, this Court took the *Hardaway* Plaintiffs' reaction to those public enforcement statements into account when analyzing individual plaintiff standing. *Id.* Here, the Plaintiffs' have continually testified that they will not violate the law, and thus, there is no harm sufficiently imminent to establish standing. See [ECF No. 10-6] ¶¶ 8, 11-12; [ECF No. 10-7] ¶¶ 8, 11-12.

## LEGAL STANDARD

To survive dismissal under Fed R. Civ. P. 12(b)(6), the pleading must contain sufficient factual allegations which state a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009). In resolving a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts may consider the pleadings and their attachments, "and any matter of which the court can take judicial notice for the factual background of the case." L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011).

For plaintiffs to have Article III standing, they must establish three things: (1) that they have an injury in fact; (2) that there is a causal connection between their injury and the conduct complained of; and (3) that their injury will be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). An injury in fact must be "particularized," and it must be "concrete." Spokeo, Inc. v. Robins, 578 U.S. 330, 340, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016), see TransUnion LLC v. Ramirez, 141, S.Ct. 2190, 2201 (2021) ("But Spokeo is not an open-ended invitation for federal courts to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts.") "Particularized" injuries "affect the plaintiff in a personal and individual way." Id. (internal quotation marks omitted). Concrete injuries are "physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts." Harty v. W. Point Realty, Inc., 28 F.4th 435, 443 (2d Cir. 2022) see also Maddox v. Bank of New York Mellon Tr. Co., N.A., 19 F.4th 58, 63–64 (2d Cir. 2021).

Here, plaintiffs lack standing to sue. "The doctrine of standing [requires] that a litigant 'prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision.'" Carney v. Adams 141 S. Ct. 493, 498 (2020) (quoting Hollingsworth v. Perry, 570 U.S. 693, 704 (2013)). And the injury has to be *real*: "an 'injury in fact' [] must be 'concrete and particularized,' as well as 'actual or imminent.' It cannot be 'conjectural or hypothetical.'" Id. (quoting Lujan v.

4

Defenders of Wildlife, 504 U.S. 555, 560 (1992)).  Plaintiffs have not made the requisite showing.

## ARGUMENT

I. **PLAINTIFFS DO NOT HAVE STANDING**

   A. **The Organizational Plaintiffs Lack Standing Because They Have Suffered No Injury of Their Own**

The organizational plaintiffs, Firearms Policy Coalition, Inc. (FPC) and Second Amendment Foundation (SAF), lack standing because they cannot bring suit vicariously on behalf of their members, and because they cannot demonstrate any injury in their own right.  The analysis is governed by the Second Circuit's recent decision in Connecticut Citizens Defense League Inc. v. Lamont, 6 F.4th 439 (2021) ("CCDL").  CCDL, like this action, was a case brought by an interest group focusing on gun issues, attempting to challenge a state measure on Second Amendment grounds.  Id. at 441.  Although the district court granted a preliminary injunction, the Second Circuit reversed and vacated (in relevant part) on standing grounds: with regard to the organizational plaintiff, the Circuit noted its longstanding doctrine that an organization "lack[s] 'standing to assert the rights of its members," and could only bring "suit on its *own* behalf" if it could show that the organization itself suffered an "actual or threatened injury in fact."  Id. at 447; see Conn. Parents Union v. Russell-Tucker, 8 F.4th 167, 174 (2d Cir. 2021) ("where, as here, an organization is not directly regulated by a challenged law or regulation," it must establish "an involuntary material burden on its established core activities"). The organizational plaintiff in CCDL argued that it "diverted resources" in response to the challenged measure by "communicat[ing] with individuals across Connecticut" and "sen[ding] a letter to the Governor."  Id. But the Circuit found that this was no basis for standing, when communicating with members, lobbying the government, and pursuing litigation generally were

"integral to CCDL's mission to preserve the effectiveness of the Second Amendment," making the relied-on actions "not a departure from CCDL's usual activities." Id. (cleaned up).

So too with the organizational plaintiffs here. Plaintiff FPC states that its purpose is to "serve[] its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, and other programs." [ECF No. 10-8] ¶ 3. Plaintiff SAF likewise says its purpose is to "preserve the effectiveness of the Second Amendment through education, research, publishing, and legal action programs." [ECF No. 10-9] ¶ 3. And the organizations' purported injuries amount to continuing with these grassroots advocacy activities, including by "addressing inquiries" and setting up a "hotline" to speak with members.[2] These activities cannot be a basis for standing because they are "not a departure from [the organizations'] usual activities."[3] CCDL, 6 F.4th at 447; see Lawyers' Committee for 9/11 Inquiry, Inc. v. Garland, 43 F.4th 276, 283 (2d Cir. 2022) (expenditure of money and resources does not confer standing if it goes to "the very mission of the plaintiff organizations"). Moreover, the only ongoing harm alleged by either organization is "incur[ing] ongoing expenses to operate the hotline," and that both organizations "expect[] to continue to be required to expend additional resources addressing New York's laws." [ECF No. 10-8] ¶¶ 9-10, [ECF No. 10-9] ¶¶

---

[2] Voluntary litigation activity is also not a sufficient basis for standing. See Clapper v. Amnesty Int'l USA, 568 U.S. 398, 416-17 (2013); Lawyers Cmte. for 9/11 Inquiry, Inc. v. Garland, 43 F.4th 276, 283 (2d Cir. 2022).

[3] Both originations' "hotlines" appear to only be simple online contact forms. See [ECF No. 10-8] ¶ 9, [ECF No. 10-9] ¶ 9 (providing the URLs for the two "hotlines"). And Plaintiff FPC regularly sets up such "hotlines" to communicate members and find potential plaintiffs for lawsuits, including before the passage of the New York law it is challenging here. See, e.g., https://twitter.com/gunpolicy/status/1536830928177221633 (June 14, 2022) (seeking plaintiffs in Florida for a lawsuit and telling them to "please fill out our hotline form"); https://twitter.com/gunpolicy/status/1540108011229683717 (June 23, 2022) ("[i]f you are denied a license to carry, please let our FPC Law team know by filing a report using the FPC 2A hotline").

9-10.[4]  "Such a conclusory assertion cannot support standing, and falls short of establishing a 'likelihood' of future injury."  CCDL, 6 F.4th at 448.

This Court did not address organizational standing in an otherwise comprehensive Preliminary Injunction Order, tacitly demonstrating its understanding that the organizational Plaintiffs do not have standing and cannot proceed in this lawsuit.  [ECF No. 52], but see id. at n.4  As such, the organizational Plaintiffs should be dismissed.

B. **The Individual Plaintiffs Lack Standing To Bring a Pre-Enforcement Facial Challenge Because They Have Not Demonstrated An Intent To Violate The Statute And A Specific Threat of Enforcement**

The two individual plaintiffs similarly lack any injury in fact, let alone one traceable to any of the defendants.  TransUnion at 2005 ("Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions.") citing Casillas, 926 F.3d at 332. Plaintiff Hardaway and Plaintiff Boyd have submitted affidavits that are virtually identical in all relevant respects, alleging that each plaintiff's practice was to carry firearms at church prior to the passage of the challenged law, but that they have ceased to do so; that each of their two churches has an "open-door policy" and so each plaintiff "will not know if [] strangers come with violent plans"; and that each plaintiff is worried about the "violence" and "crime" that occurs in their church's neighborhood.  [ECF No. 10-6] ¶¶ 8-10; [ECF No. 10-7] ¶¶ 8-10.  Each individual plaintiff separately states that they previously "encouraged parishioners to carry a firearm if they were licensed to do so," but no longer; and each avers, "I have been stripped of the ability to keep the

---

[4] The relevant sections of the two organizations' statements are word-for-word identical.

peace, and I am suffering diminished personal safety every time I go to church." [ECF No. 10-6] ¶¶ 11-12, [ECF No. 10-7] ¶¶ 11-12.

These allegations provide no basis for standing, particularly in a pre-enforcement facial challenge such as this one. "A plaintiff cannot establish standing by asserting an abstract general interest common to all members of the public, no matter how sincere or deeply committed a plaintiff is to vindicating that general interest on behalf of the public." Carney, 141 S. Ct. at 499 (quotation marks omitted). Rather, in the context of a pre-enforcement facial challenge such as this one, standing requires "plausible allegations that a plaintiff intends to engage in conduct proscribed by a statute, and there exists a credible threat of prosecution thereunder." Frey v. Bruen, No. 21 Civ. 5334, 2022 WL 522478, at *4 (S.D.N.Y. Feb. 22, 2022) (quotation marks omitted).

Here, no plaintiff alleges the first element – in fact, both individual plaintiffs acknowledge that they have followed the law and continue to do so, see [ECF No. 10-6] ¶¶ 8, 11-12; [ECF No. 10-7] ¶¶ 8, 11-12.  This is insufficient, as a matter of law, to confer standing for a pre-enforcement facial challenge. See, e.g., Antonyuk v. Bruen, No. 22 Civ. 734, 2022 WL 3999791 at *16-18 (N.D.N.Y. Aug. 31, 2022) (no standing where plaintiff had "alleged and/or sworn that he 'desires,' 'wants,' 'wishes' or 'would like,'" to carry a concealed handgun in prohibited locations, but had not established a concrete intent to do so."); Brokamp v. James, 573 F. Supp. 3d 696, 705 (N.D.N.Y. 2021) (no standing where plaintiff "fails to allege either a concrete intention to violate the law . . . . [i]f anything, plaintiff seems to concede that she intends to *follow* the law, not violate it." (emphasis in the original)).  And even generalized statements of intent are not sufficient: "such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a

finding of the 'actual or imminent' injury that is required." Frey, 2022 WL 522478 (quoting Lujan, 504 U.S. at 564) (emphasis in the original).

Likewise, no plaintiff alleges that any defendant has taken or threatened any enforcement action against them, see generally [ECF No. 10-6], [ECF No. 10-7]. This is a separate and fatal standing defect, as a plaintiff must "establish[] that their prosecution is likely, or otherwise that the threatened injury is certainly impending or that there is a substantial risk that they will be harmed." Does 1-1- v. Suffolk County, No. 21-1658, 2022 WL 2678876, at *3 (2d Cir. July 12, 2022) (citing Knife Rights, Inc. v. Vance, 802 F.3d 377, 384 (2d Cir. 2015) and Dorce v. City of New York, 2 F.4th 82, 95 (2d Cir. 2021)). The Does case is instructive – in that case, the Suffolk County Police had sent the plaintiffs a letter stating that their ownership of certain weapons was illegal and that they "may be subject to arrest and criminal charges" if they failed to turn over the weapons within fifteen days; even though the plaintiffs did not comply, the Circuit still found no standing because there was no allegation "that any individual Doe has been arrested or had their firearm forcibly confiscated," or even that anyone similarly situated had. See Does, 2022 WL 2678876, at *3. The allegations here – where there has been no specific threat of enforcement against any specific plaintiff – pale in comparison to those in Does, which were nonetheless held to be insufficient. Accordingly, there is no injury-in-fact for purposes of a pre-enforcement facial challenge, and certainly none traceable to any defendant in this action.

## **CONCLUSION**

Because all Plaintiffs lack standing, this lawsuit must be dismissed. Alternatively, should the State's Motion to Dismiss be denied, the State requests fourteen days to file an answer in this matter as provided for by Rule 12(a)(4)(A).

Dated: Buffalo, New York
December 2, 2022

                                          LETITIA JAMES
                                          Attorney General
                                          State of New York

                                          By: /s/ Ryan L. Belka
                                          RYAN L. BELKA
                                          Assistant Attorney General
                                          350 Main Place, Suite 300A
                                          Buffalo, NY 14202
                                          (716) 853-8440
                                          Ryan.Belka@ag.ny.gov

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JIMMIE HARDAWAY, JR., LARRY A. BOYD,
FIREARMS POLICY COALITION, INC., and
SECOND AMENDMENT FOUNDATION

                              Plaintiffs,

      v.

No. 22-cv-00771 (JLS)

STEVEN A. NIGRELLI, in his official capacity as
Superintendent of the New York State Police, BRIAN D.
SEAMAN, in his official capacity as District Attorney for the
County of Niagara, and JOHN J. FLYNN, in his official
capacity as District Attorney for the County of Erie,

                              Defendants.

## CERTIFICATE OF SERVICE

      I hereby certify that on December 2, 2022, I electronically filed the foregoing with the Clerk of the District Court using its CM/ECF system.

Dated: Buffalo, New York
         December 2, 2022

                                                  LETITIA JAMES
                                                  Attorney General
                                                  State of New York

                                                  By: /s/ Ryan L. Belka
                                                  RYAN L. BELKA
                                                  Assistant Attorney General
                                                  350 Main Place, Suite 300A
                                                  Buffalo, NY 14202
                                                  (716) 853-8440
                                                  Ryan.Belka@ag.ny.gov