UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JIMMIE HARDAWAY, JR., et al.,

               Plaintiffs,

      v.

STEVEN A. NIGRELLI, et al.,

               Defendants.

Case No.: 1:22-cv-771

---

## **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 1

I.   Plaintiffs Have Injuries in Fact. ....................................................................................... 2

     a.   Reverend Hardaway's and Bishop Boyd's Injuries. ...................................................... 3

     b.   FPC's and SAF's Injuries. ............................................................................................ 8

CONCLUSION ........................................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page**

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979)...................................6, 7, 8

*Bowsher v. Synar*, 478 U.S. 714 (1986)...................................................................3

*California v. Texas*, 141 S. Ct. 2104 (2021) .............................................................2

*Cayuga Nation v. Tanner*, 824 F.3d 321 (2d Cir. 2016) ...................................................7

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*,
    868 F.3d 104 (2d Cir. 2017)........................................................................10

*Christian v. Nigrelli*, 22-CV-695 (JLS), 2022 WL 17100631 (W.D.N.Y. Nov. 22, 2022)............6

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) .....................................4

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .....................................................5

*Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439 (2d Cir. 2021) ................................9

*Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167 (2d Cir. 2021)........................................9, 10

*Doe v. Bolton*, 410 U.S. 179 (1973)....................................................................6, 8

*Does 1-10 v. Suffolk Cnty., N.Y.*, No. 21-1658, 2022 WL 2678876 (2d Cir. July 12, 2022)...........7

*Epperson v. Arkansas*, 393 U.S. 97 (1968)...............................................................6

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir 2011) ................................................4, 5

*Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638 (2022) ................................................3, 5

*District of Columbia v. Heller*, 554 U.S. 570 (2008)....................................................3

*Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91 (1979) ...........................................2

*Hardaway v. Nigrelli*, 22-CV-771 (JLS), 2022 WL 11669872 (W.D.N.Y. Oct. 20, 2022) ........1, 6

*Hardaway v. Nigrelli*, 22-CV-771 (JLS), 2022 WL 16646220 (W.D.N.Y. Nov. 3, 2022) .........1, 6

*Hedges v. Obama*, 724 F.3d 170 (2d Cir. 2013) .........................................................6, 7

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ................................................6

*Lewis v. Casey*, 518 U.S. 343 (1996)...................................................................4

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
    140 S. Ct. 2367 (2020)............................................................................8, 9

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992).......................................................2

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) ...................................................2

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)...............................................5

*Mental Disability Law Clinic, Touro Law Ctr. v. Hogan*,
    519 F. App'x 714 (2d Cir. 2013) ..................................................................8, 9

*Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011)............................................................9

*N.Y. State Citizens' Coal. for Child. v. Velez*, 2016 WL 11263164 (E.D.N.Y. Nov. 7, 2016) ........9

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) ......................................3, 4

*Olsen v. Stark Homes, Inc.,* 759 F.3d 140 (2d Cir. 2014)................................................................9

*Pleasant Grove City v. Summum*, 555 U.S. 460 (2009)...................................................................4

*Rumsfeld v. FAIR*, 547 U.S. 47 (2006) ...........................................................................................3

*Silva v. Farrish*, 47 F.4th 78 (2d Cir. 2022) ...............................................................................2, 7

*Spokeo  v. Robbins*, 578 U.S. 330 (2016) .......................................................................................4

*Steffel v. Thompson*, 415 U.S. 452 (1974) .....................................................................................5

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014).......................................................1, 2, 5

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ......................................................3, 4, 5, 10

*Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988)........................................................6

*Warth v. Seldin*, 422 U.S. 490 (1975)............................................................................................2

**Constitution and Statutes**

42 U.S.C. § 1983 ...........................................................................................................................9

**Other Authorities**

*2Ahotline.com: FPC Legal Action Hotline - Submit a Report*,
    https://www.firearmspolicy.org/hotline ............................................................................10

*FPC Hotline–New York*,
    https://www.firearmspolicy.org/nyhotline ..........................................................................10

## INTRODUCTION

On the eve of the Place of Worship Ban's effective date, now-Acting Superintendent of the New York State Police Steven Nigrelli took to the podium with other elective leaders of New York and delivered a strikingly simple message about S51001: "If you violate this law, you will be arrested. Simple as that." *Hardaway v. Nigrelli*, 22-CV-771 (JLS), 2022 WL 16646220, at *5 (W.D.N.Y. Nov. 3, 2022). "Nigrelli explained that, in New York State, troopers 'are standing ready' to ensure that 'all laws are enforced.' He emphasized that the troopers will have 'zero tolerance,' and it is an 'easy message' that he does not need to 'spell it out more than this.'" *Id.* (citations omitted). Among the new provisions of S51001 is the Place of Worship Ban, which indisputably bans Reverend Hardaway and Bishop Boyd from carrying firearms for self-defense outside the home in their respective churches. *See* Complaint Declaratory and Injunctive Relief, No. 1:22-cv-771-JLS, Doc. 1, ¶¶ 8–9, 34–39 (Oct. 13, 2022) ("Compl."); Decl. of Rev. Dr. Jimmie Hardaway, Jr., Doc. 9-4, ¶¶ 8–12 (Oct. 14, 2022) ("Hardaway Decl."); Decl. of Bishop Larry A. Boyd, Doc. 9-5 ¶¶ 8–12 (Oct. 14, 2022) ("Boyd Decl."). In the State's motion to dismiss, the State exclusively argues that Plaintiffs lack standing. As this Court has twice recognized, the State's arguments with respect to Reverend Hardaway and Bishop Boyd are meritless. *Hardaway*, 2022 WL 16646220, at *5 (Prelim. Inj.); *Hardaway v. Nigrelli*, 22-CV-771 (JLS), 2022 WL 11669872, at *4 (W.D.N.Y. Oct. 20, 2022) (TRO). Since nothing in the record remotely suggests the State's recycled briefing should lead to any different conclusion, the Court should deny the State's motion to dismiss.

## ARGUMENT

In order to establish standing, Plaintiffs must establish a "personal stake in the outcome of the controversy" by demonstrating an injury in fact fairly traceable to the challenged conduct

1

of Defendants that will be redressed by a favorable decision of this Court. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted). The State only argues that Plaintiffs "lack any injury in fact." State's Mem. of Law in Support of Mot. to Dismiss at 7, Doc. 60-1 (Dec. 2, 2022) ("State Br.").[1] This is a meritless contention.

## I.    Plaintiffs Have Injuries in Fact.

As with "any other matter on which the plaintiff bears the burden of proof," the "manner and degree of evidence required" varies based on the "stage[] of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Here, an assessment of standing turns on the pleadings. Accordingly, the Court must "accept as true all material allegations of the complaint, and . . . construe the complaint in favor of the complaining party." *Silva v. Farrish*, 47 F.4th 78, 87 (2d Cir. 2022) (quoting *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 109 (1979)). And, in doing so, the Supreme Court has instructed that a court is to "presume[] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). In making its standing determination, the Court can also consider "other facts and circumstances as may be evident from the record," *Silva*, 47 F.4th at 87, including the filed declarations, which substantiate the Plaintiffs' allegations, *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Each of the four Plaintiffs has alleged an adequate basis for standing. Of course, this Court's jurisdiction is secure if a single plaintiff has standing, and therefore once the Court determines that is the case it need not evaluate the standing

---

[1] The State also, in a singular clause of a single sentence, says no injury is traceable to Defendants. The lack of development of this argument is proof of its weakness. Defendants are principal enforcement officers that can seek criminal penalties for the violation of state law. *See* Compl. ¶¶ 15–17. With both a still-in-effect penalty and enforcement officials with the duty to seek that penalty, Plaintiffs' injuries are "fairly traceable" to Defendants. *California v. Texas*, 141 S. Ct. 2104, 2114 (2021).

of other plaintiffs. *See Rumsfeld v. FAIR*, 547 U.S. 47, 52 n.2 (2006); *see also Bowsher v. Synar*, 478 U.S. 714, 721 (1986) (holding when "[i]t is clear that" one plaintiff "will sustain injury . . . sufficient to confer standing," the court "need not consider the standing issue as to" other plaintiffs).

### a. Reverend Hardaway's and Bishop Boyd's Injuries.

An injury in fact must be "concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). The denial of Plaintiffs' Second Amendment right to carry for self-defense "outside the home" is one such injury in fact. *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022). After all, prior to this Court's issuance of injunctive relief, the Place of Worship Ban immediately and actually disarmed Plaintiffs in their respective places of worship each and every day they preached the Gospel and set foot on the premises of their churches. *See* Compl. ¶¶ 8–9, 34–39; Hardaway Decl. ¶¶ 8–12; Boyd Decl. ¶¶8–12. For purposes of standing, this Court must assume that this immediate and actual disarmament unconstitutionally infringes Plaintiffs' Second Amendment rights. *See Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1647–48 (2022).

The State briefly argues that Plaintiffs' have no basis for standing because they merely "assert[] an abstract general interest common to all members of the public." State Br. at 8 (internal quotation marks omitted). But it is beyond dispute that the Second Amendment "guarantee[s] the *individual* right to possess and carry weapons in case of confrontation." *Bruen*, 142 S. Ct. at 2127 (quoting *Dist. Of Columbia v. Heller*, 554 U.S. 570, 592 (2008)) (emphasis added). Here, Reverend Hardaway and Bishop Boyd have been denied the individual right to carry a firearm for self-defense each time they go to church because they cannot carry. It makes no difference that the Place of Worship Ban applies to every individual who visits a location outside the home to exercise

3

their faith; "[t]he fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance." *Spokeo v. Robbins*, 578 U.S. 330, 339 n.7 (2016).

This particularized injury to Plaintiffs' is also "concrete," which the Supreme Court has explained means only that the alleged injury be "real, and not abstract." *Id*. at 340 (internal quotation marks omitted); *accord TransUnion*, 141 S. Ct. at 2204. "Various intangible harms can . . . be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id*. Traditional harms include those "specified by the Constitution itself." *Id*.; *see also Spokeo*, 578 U.S. at 340 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) (free speech); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) (free exercise)). An alleged violation of the Second Amendment is no less concrete than the violation of any other individual constitutional right. *Ezell v. City of Chicago*, 651 F.3d 684, 695 (7th Cir 2011) ("[T]he City's ban on firing ranges inflicts continuous harm to their claimed right to engage in range training and interferes with their right to possess firearms for self-defense. These injuries easily support Article III standing."); *cf. Bruen*, 142 S. Ct. at 2130 (analogizing the standard applicable to the Second Amendment to "how we protect other constitutional rights" including the First Amendment).

The unconstitutional deprivation of Plaintiffs' Second Amendment rights has created injuries that are both actual and imminent for purposes of standing. For one, Plaintiffs have suffered the loss of their Second Amendment rights when, by virtue of the threatened enforcement of the Place of Worship Ban, they disarmed before this Court's issuance of preliminary equitable relief. *See Ezell*, 651 F.3d at 695; *see also Lewis v. Casey*, 518 U.S. 343, 349 (1996) (explaining "actual harm" stems from "official interference" with a claimed constitutional right). For another,

4

there is the threat of ongoing, "continuous harm to [Plaintiffs'] claimed right to" carry firearms for self-defense in places of worship going forward as they would be forced to disarm again each time they visit their churches in the future (in the absence of permanent injunctive relief). *Ezell*, 651 F. 3d at 695. "[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief"—as Plaintiffs do here—"to prevent th[at] harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion*, 141 S. Ct. at 2210 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)).

Here, the State recycles its argument that Plaintiffs lack standing because Plaintiffs have not promised to *break* the law and have not had enforcement actions taken against them. State Br. at 8–9. As the Supreme Court reaffirmed this year, such a break-the-law threshold for standing "finds no support in our standing jurisprudence." *Cruz*, 142 S. Ct. at 1648. Instead, "[w]hen an individual is subject to" "threatened enforcement of a law," then "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List*, 573 U.S. at 158. Indeed, it is not even necessary for an individual to "first *expose* himself to actual arrest or prosecution to be entitled to challenge a statute that he claims *deters* the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459, (1974) (emphases added); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–129 (2007); *Cruz*, 142 S. Ct. at 1649 (explaining a plaintiff could establish standing "by simply alleging and credibly demonstrating that [he] wished to" do what the challenged restriction prohibited him from doing). Thus, in *Steffel*, the plaintiff had standing to challenge a criminal trespass statute that had caused him to *refrain* from engaging in certain handbilling activities: he "alleged . . . that . . . he had not done so because of his concern that he . . . would be arrested for violation of" the challenged law. 415 U.S. at 456. The same reasoning applies here: Plaintiffs have standing because they previously refrained from

carrying firearms in their churches only because of the very real prospect of arrest and prosecution should they do so, as demonstrated by Acting Superintendent Nigrelli's comments.

The State asserts that, nevertheless, this threat of enforcement is not sufficiently credible. Under unchanged facts, this Court has rejected this exact argument twice in this case and again in another. *Hardaway*, 2022 WL 16646220, at *5; *Hardaway*, 2022 WL 11669872, at *4; *Christian v. Nigrelli*, 22-CV-695 (JLS), 2022 WL 17100631, at *4 (W.D.N.Y. Nov. 22, 2022). Both Supreme Court and Second Circuit precedent warrant doing so again. In a pre-enforcement challenge, the Supreme Court has held that a credible threat of enforcement is presumed when a statute "is recent and not moribund." *Doe v. Bolton*, 410 U.S. 179, 188 (1973) (plaintiffs had "standing despite the fact that . . . [not] one of them ha[d] been prosecuted, or threatened with prosecution"); *see also Epperson v. Arkansas*, 393 U.S. 97 (1968) (recognizing the right of a school teacher, though not yet criminally charged, to challenge a state statute regulating the teaching of evolution). As the Second Circuit has explained, this is a "forgiving" standard. *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013). In fact, when "a statute indisputably proscribe[s] the conduct at issue," the Supreme Court does "not place the burden *on the plaintiff* to show an intent by the government to enforce the law," instead "it presume[s] such intent in the absence of a disavowal by the government or another reason to conclude that no such intent existed." *Id.* (emphasis added); *see also id.* at 197 n.156 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 16 (2010) (noting that "Government has not argued to this Court that plaintiffs will not be prosecuted if they do what they say they wish to do"); *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) (noting that "State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise"); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979) (identifying justiciable controversy, even though "criminal penalty provision has not yet

6

been applied and may never be applied to commissions of unfair labor practices" in part because "State has not disavowed any intention of invoking the criminal penalty provision against unions that commit unfair labor practices"); *Silva*, 47 F.4th at 88 ("The state has not foresworn enforcement of the fishing regulations, and 'courts are generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund.'" (quoting *Cayuga Nation v. Tanner*, 824 F.3d 321, 323 (2d Cir. 2016))).

The State's citation to a recent unpublished summary order by the Second Circuit cannot overcome this mountain of contrary and controlling precedent. *See Does 1-10 v. Suffolk Cnty., N.Y.*, No. 21-1658, 2022 WL 2678876 (2d Cir. July, 12, 2022). Moreover *Does*, at most, stands for the proposition that when there is "another reason" in the record to "conclude" that the government does not intend to prosecute, then plaintiffs may need to make an additional showing of threatened enforcement. *Hedges*, 724 F.3d at 197. In *Does*, Suffolk County sent notices of non-compliance, indicating that plaintiffs "may be subject to arrest and criminal charges" but then never followed up in any way for over a year prior to the plaintiffs' filing of the lawsuit. *Does*, 2022 WL 2678876 at *3. Moreover, the Court indicated it was unclear if the relevant law even applied to the *Does* plaintiffs. *Id.* at *1 n.1 (noting merits question of whether regulated items were actually "firearm[s]" under the law."); *id.* at *3 (notice from Suffolk County stated "*may*" be subject to arrest). Here, by contrast, there is nothing in the record to suggest the Place of Worship Ban will not be enforced. It is undisputed that if Plaintiffs carry firearms on church grounds, the Place of Worship Ban forbids it. *Hedges*, 724 F.3d at 197; *Cayuga Nation*, 824 F.3d at 331. And there is no indication of any kind in any document submitted to this Court or any other that Defendants *would not* enforce this Place of Worship Ban. That is sufficient for standing, especially at the motion to dismiss stage. *Silva*, 47 F.4th at 87.

7

Finally, the State argues that Plaintiffs have only alleged a "some day" intention to carry. But Reverend Hardaway declared that prior to the Place of Worship Ban he "typically would carry a firearm concealed on Trinity Baptist's premises, in particular on Sundays and during services." Compl. ¶ 34. In fact, he has "almost always carried a firearm" since the Charleston tragedy in 2015. Hardaway Decl. ¶10. Bishop Boyd similarly "would carry a firearm concealed on Open Praise's premises . . . on Sundays and during services," Compl. ¶ 36, and he has done so "[s]ince [he] ha[s] been licensed." Boyd Decl. ¶ 10. Both alleged they would carry again, "[b]ut for New York's unconstitutional Place of Worship Ban, and the Defendants' enforcement thereof." Compl. ¶ 38; *see also* Hardaway Decl. ¶ 11; Boyd Decl. ¶ 11. These 'Sunday' intentions are sufficient for standing.

*     *     *

"When [a] plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'" *Babbitt*, 442 U.S. at 298 (quoting *Doe*, 410 U.S. at 188). Plaintiffs have demonstrated that this is the case here. Prior to the Place of Worship Ban, each would carry for self-defense at their churches. This is conduct protected by the Second Amendment. It is proscribed by statute. And there exists no dispute Defendants would enforce it.

**b.   FPC's and SAF's Injuries.**

Because Hardaway and Boyd have standing, there is no need or warrant for the Court to assess FPC's and SAF's standing. *See Little Sisters of the Poor Saints Peter & Paul Home v.*

8

*Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020). But FPC and SAF both have standing.[2] Courts in the Second Circuit have found that organizations have adequately alleged standing when they have "diverted resources from education and training," fielded members' phone inquiries about the change in the law, and investigated and advocated on their members' behalf with respect to the law's requirements. *Mental Disability Law Clinic, Touro Law Ctr. v. Hogan*, 519 F. App'x 714, 717 (2d Cir. 2013); *Olsen v. Stark Homes, Inc.,* 759 F.3d 140, 158 (2d Cir. 2014); *Nnebe v. Daus*, 644 F.3d 147, 157 (2d Cir. 2011); *N.Y. State Citizens' Coal. for Child. v. Velez*, No. 10-cv-3485, 2016 WL 11263164, at *3–5 (E.D.N.Y. Nov. 7, 2016). FPC and SAF have alleged that here. *See* Compl. ¶¶ 13–14; Decl. of Brandon Combs, Doc. 9-6, ¶¶6–10 (Oct. 14, 2022) ("FPC Decl."); Decl. of Alan Gottlieb, Doc. 9-7 ¶¶6–10 (Oct. 14, 2022) ("SAF Decl."). In particular, they both have established hotlines to address concerns from their members and the public to answer questions about where individuals can lawfully carry in New York State. They would not have done so, but for the unconstitutional burden imposed on New Yorkers by S51001. The hotlines represent diversion of resources from their normal activities as they were only established to address new questions and concerns about lawful carry *after* the enactment of S51001. *See Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 447 (2d Cir. 2021).

At bottom, the organizational standing inquiry focuses on "the involuntary and material impacts on core activities by which the organizational mission has historically been carried out." *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 175 (2d Cir. 2021). Because of the enactment of S51001, both organizations have addressed inquiries that would not have arisen in the absence of S51001 and its unconstitutional restrictions on where New Yorkers can carry. Compl. ¶¶ 13–

---

[2] FPC and SAF preserve the right to seek to overrule circuit precedent that an organization does not have standing to assert the rights of its members under 42 U.S.C. § 1983. Compl. ¶ 12.

14; FPC Decl. ¶¶ 7–9; SAF Decl. ¶¶ 8–9; *see Conn. Parents Union*, 8 F.4th at 175. This includes, but is not limited to, the establishment of new hotlines, specific to New York's new unconstitutional restrictions, to assist members and the public about where and under what circumstances individuals can carry lawfully. Compl. ¶¶ 13–14; FPC Decl. ¶¶ 7–9; SAF Decl. ¶¶ 8–9. Contrary to the State's incorrect assertions, these hotlines are new[3] (while still consonant with the organizations' "core activities," *Conn. Parents Union*, 8 F.4th at 174), they are staffed, and they are resourced, thus the organizations have sufficiently alleged specific, ongoing expected expenses and diversion of resources from other organizational activities. Compl. ¶¶ 13–14; FPC Decl. ¶¶7–9; SAF Decl. ¶¶ 8–9; *see Conn. Parents Union*, 8 F.4th at 174 (standing found when organization "divert[ed] resources from other of its activities to combat the effects of the [challenged] ordinance" (quoting *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 110 (2d Cir. 2017)). Finally, both organizations' members "face the risk of 'erroneous arrest' while" exercising their Second Amendment rights due to S51001, including the Place of Worship Ban, which further substantiates the organizations' standing. *Conn. Parents Union*, 8 F.4th at 174 (quoting *Centro*, 868 F.3d at 110); *see* Compl. ¶ 38; FPC Decl. ¶¶ 5–6; SAF Decl. ¶¶ 5–6

At the motion to dismiss stage, FPC and SAF have made the requisite showing that they have a sufficient "personal stake" in the case for standing. *TransUnion*, 141 S. Ct. at 2203.

---

[3] *Compare FPC Hotline–New York*, https://www.firearmspolicy.org/nyhotline (describing how "many FPC members and members of the public have asked how [S51001] affects them," how FPC "created this New York Hotline to help you understand how these laws affect you and your rights, and how "[w]hen you submit an inquiry to this Hotline, FPC staff will review your question, consult with counsel, and email you a response as soon as possible"); *with 2Ahotline.com: FPC Legal Action Hotline – Submit a Report*, https://www.firearmspolicy.org/hotline (general hotline to identify "legally-significant issues" across the country).

**CONCLUSION**

For the foregoing reasons, the State's motion to dismiss should be denied.

Respectfully submitted, this 29th day of December 2022.

<table>
<tr><td>

Nicolas J. Rotsko
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, NY 14203-2887
(716) 847-5467
(716) 852-6100 (fax)
NRotsko@phillipslytle.com

</td><td>

/s/ David H. Thompson*
David H. Thompson
Peter A. Patterson*
John W. Tienken*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
jtienken@cooperkirk.com

*Admitted *pro hac vice*

</td></tr>
</table>

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify I filed the foregoing with the Clerk of the District Court using its CM/ECF system on this 29th day of December 2022.

<u>/s/ David H. Thompson</u>
David H. Thompson